**UNITED STATES of America,**
**Appellant,**

v.

**Terrance ANDERSON,**
**Defendant–Appellee.**

**No. 1135, Docket 90–1741.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1991.

Decided April 2, 1991.

Mark Cohen, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., Susan Corkery, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellant.

John Apicella, Brooklyn, N.Y., for defendant-appellee.

Before FEINBERG, MESKILL and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The government appeals from an order of the United States District Court for the Eastern District of New York (Korman, J.) dated November 19, 1990 that granted defendant Terrance Anderson's motion to suppress his confession upon a finding that it was procured in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the defendant was given the prophylactic warnings and said he understood them and did not need a lawyer present when questioned, the arresting officer should have been satisfied

that he was about to obtain a voluntary confession. But, like Semele[1] who was not content with what she had, and used trickery to obtain more proof, the arresting officer in his eager pursuit of a confession also employed trickery to browbeat defendant into making a statement. As might be expected, such an attempt had negative consequences. Here it led the district court to suppress the defendant's confession given at the scene and his later confession made at headquarters. From the order granting suppression the government appeals. We affirm.

## FACTS

On June 14, 1989 Agent Patrick Valentine, a supervising special agent of the United States Drug Enforcement Administration (DEA), acting pursuant to a warrant, arrested Terrance Anderson in Brooklyn, New York after he left the Guy Food Store. Valentine informed Anderson he was under arrest for conspiracy to distribute cocaine as a member of the Alfred Jonas narcotics organization. Later, while both were seated in a government car, he advised Anderson of his *Miranda* rights by reading them to him from a DEA printed card. Each right was read individually and Anderson responded that he understood them. When asked if he wanted a lawyer present before answering any questions, Anderson replied that he did not need one.

Valentine then proceeded to tell Anderson that if he asked for an attorney, no federal agents would be able to speak to him further; the agent added "this [is] the time to talk to us, because once you tell us you want an attorney we're not able to talk to you and as far as I [am] concerned, we probably would not go to the U.S. Attorney or anyone else to tell them how much [you] cooperated with us." The "if you want a lawyer you can't cooperate" language was repeated three times, after which Anderson made several incriminating statements admitting he was a "small time" drug dealer working with Alfred Jonas.

Valentine testified he then asked Anderson how many people were in the Guy Food Store (where the agents were about to execute a search warrant), whether people there might have guns, and whether there were drugs on the premises. The defendant was unable to answer the first two questions, and "danced around" the third, according to the agent, in a frustratingly evasive manner. Valentine testified he then told him: " 'You're not helping us at all here. Time is of the essence. We've got a search warrant here. We're going to do this and then we're going to take you downtown.' " At this point the agent ended his interrogation and returned to the store where he and another agent executed the search warrant and arrested several of defendant's co-conspirators, including Jonas.

While Anderson was at the scene in the back of the car, he screamed at another agent, Arnold Moorin: "I have to talk to you. I'm not the one you want. The one you want is a man named Alfred Jonas." Moorin approached Anderson and replied: "you're 100% correct. We just locked him up. Now is not the time to talk to me, just wait until we get back to the office." After the DEA agents transported Anderson to their office at Federal Plaza in Manhattan, an agent there asked Anderson if he wanted to make a statement. Anderson said he did, and Moorin was called into the room. Moorin told Anderson that if he wanted to make a statement he had to read and sign a waiver of rights form, and then have his statement taken down in writing. Moorin also said it would be in Anderson's best interest to cooperate fully, and that he would inform the U.S. Attorney's Office of Anderson's cooperation. Moorin testified he was trying to get from Anderson the location of a so-called "stash" house where he thought there might be a large quantity of drugs.

---

1. Semele who loves the god Jupiter is not content with his human guise and tricks him into revealing his god-like nature. When he appears in his "thunders and lightnings," it is too much for her mortal frame, which is consumed to ashes. C.M. Gagley, *The Classic Myths*, 71, 72 (Rev. ed. 1939).

The waiver of rights form was read to Anderson, who said he understood it. After signing the form, defendant made a second statement in which he admitted to being an "enforcer" for the Alfred Jonas crack organization, and gave details regarding other members and their roles in the organization.

In suppressing Anderson's statements to agents Valentine and Moorin, the district court ruled that because agent Valentine's statements were factually and legally erroneous they effectively undermined the *Miranda* warnings given Anderson and, in effect, compelled him to talk. In a subsequent opinion, dated December 11, 1990, 752 F.Supp. 565, the district court reiterated the same point. It found, in the alternative, that even if the original *Miranda* warnings were properly administered, the defendant's statements still should be suppressed because they were procured by coercion. It concluded the second statement had been tainted by the first, and therefore it suppressed that statement too.

## DISCUSSION

### I *The Miranda Warnings*

■ The district court based its decision to suppress Anderson's statements in part on its conclusion that the *Miranda* warnings administered initially by Agent Valentine failed to overcome the "presumption of coercion" those warnings were designed to dispel. We review the warnings not for whether they adhered to a certain form, but for their substance. *See Duckworth v. Eagan*, 492 U.S. 195, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166 (1989). We must ascertain if Anderson had his *Miranda* rights brought home to him in an intelligible fashion. *See id; California v. Prysock*, 453 U.S. 355, 361, 101 S.Ct. 2806, 2810, 69 L.Ed.2d 696 (1981) (per curiam); *Rhode Island v. Innis*, 446 U.S. 291, 297, 100 S.Ct. 1682, 1687, 64 L.Ed.2d 297 (1980).

■ All the *Miranda* bases were touched in the initial warnings agent Valentine gave Anderson. It was at this point— after the warnings were complete and Anderson had agreed to speak further with the agent without a lawyer present—that Valentine should simply have taken defendant's statement. Instead, the agent told defendant that if he asked for a lawyer it would permanently preclude him from cooperating with the police. Thus, the issue before us is not whether the *Miranda* warnings were adequate. It is quite clear that they were. Rather, we must decide whether the agent's statements—made immediately after the warnings were given— coerced the defendant into confessing. We therefore address the propriety of the agent's post-*Miranda*-warning statements in the context of their impact on the voluntariness of defendant's confession.

### II *The First Confession*

The district court, in suppressing Anderson's statements, relied on its conclusion that they were coerced, in violation of the Fifth Amendment. The police may use a defendant's confession without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice. Since custodial interrogation is inherently coercive, *see New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984), the aim of *Miranda* and its progeny is to safeguard a suspect's right, if he so chooses, to remain silent when questioned by the police. *See Miranda*, 384 U.S. at 469, 86 S.Ct. at 1625; *see also Moran v. Burbine*, 475 U.S. 412, 426, 106 S.Ct. 1135, 1143, 89 L.Ed.2d 410 (1986) ("*Miranda* attempted to reconcile [competing] concerns by giving the *defendant* the power to exert some control over the course of the interrogation.") (emphasis in original); *Oregon v. Elstad*, 470 U.S. 298, 308, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985) ("Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities").

By administering the *Miranda* warnings police protect and reinforce the citizen's Fifth Amendment right against self-incrimination. Because in-custody interrogation contains psychological pressures that cause a suspect to speak when he would otherwise remain silent, the prosecution must

show that this safeguard of informing the accused of his rights was actually employed, so that a right enshrined in the words of the Constitution is not lost in the reality of the street.

A confession is not voluntary when obtained under circumstances that overbear the defendant's will at the time it is given. *See Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). Whether a confession is a product of coercion may only be determined after a careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *Green v. Scully*, 850 F.2d 894, 901–02 (2d Cir.), *cert. denied*, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); *see also Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (to determine whether defendant made "an intentional relinquishment or abandonment of a known right or privilege" courts must examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused"). The prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his *Miranda* rights, and that his confession is truly the product of free choice. *See Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986).

The district court did not consider these factors in making its decision. Instead, it held that because the agents' statements to the defendant were intended to trick and cajole the defendant into confessing, it was impossible to find that he waived his rights voluntarily. Though the "trickery" premise is correct, the district court's conclusion respecting the "impossibility of a waiver" is not. Trickery does not make it impossible *per se* to find that a defendant voluntarily waived his rights. For example, the facts could reveal that the suspect was knowledgeable about *Miranda* waivers in federal court, and therefore highly unlikely to be tricked by an agent's statements. Hence, the application of a *per se* rule is inappropriate.

Regardless of whether the agent's statements were false, misleading, or intended to trick and cajole the defendant into confessing, specific findings must be made that under the totality of the circumstances—considering the three listed factors—the defendant's will was overborne by the agent's conduct. The error does not compel reversal of the district court's decision, since the voluntariness issue presents a legal question that we review *de novo*. *See Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985); *United States v. Romero*, 897 F.2d 47, 52 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 975, 112 L.Ed.2d 1060 (1991).

We look first at defendant's background. He had been arrested 12 times previously and on 11 occasions pled guilty to the crime charged. The government believes this experienced criminal background proves his statements were freely given. We disagree. Nothing in the record reveals that on the prior occasions Anderson was given *Miranda* warnings or that he waived his rights, or in fact made any statements to the police. His background suggests familiarity with the criminal justice system generally; it does not intimate any knowledge of the rules regarding the benefits of cooperating with the government in federal court. *See* United States Sentencing Guidelines (Guidelines) § 5K1.1. Thus, this accused's background does not support the government's notion that Anderson's confession was voluntarily given.

The conditions under which interrogation occurred is the next factor to be analyzed. After being arrested for a narcotics conspiracy, Anderson and his female companion were placed in the back seat of the government vehicle, where he received the *Miranda* warnings. The fact that the questioning took place in close quarters is not significant in determining whether Anderson's statements were voluntary. Standing alone, the conditions of interrogation in this case do not point either way.

Critical in this case is the final factor, that is, the conduct of the law enforcement officers. Supervising Agent Valentine candidly admitted he told Anderson three times to choose between having an attorney present during questioning, *see Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), or cooperating with the government. We agree with the district court that these statements were false and/or misleading. It is commonplace for defendants who have acquired counsel to meet with federal law enforcement officials and agree to cooperate with the government. The Guidelines explicitly provide for this procedure and, upon the government's motion, give a sentencing court authority to depart below mandatory statutory minimum sentences where such cooperation is deemed substantial. *See* Guidelines § 5K1.1 and application note 1.

The government argues the agent's statements were not false or misleading in the context of this case because while cooperation is ordinarily possible after counsel has been retained, here Valentine sought specific information prior to executing a search warrant, information only Anderson could immediately supply. The exigency argument fails for two reasons. First, agent Valentine's testimony significantly undercuts reliance on the argument. Unlike the circumstances in *Quarles*, 467 U.S. at 655–57, 104 S.Ct. at 2631–32 (danger to public safety provides exception to the requirement that *Miranda* warnings be given before suspect is questioned), agent Valentine obviously felt comfortable administering the full *Miranda* warnings to Anderson in an unhurried manner as they sat in a government car. Further, the agent's testimony that he needed information from Anderson to aid in executing the search warrant seems more a *post-hoc* rationalization for his conduct, particularly in light of his earlier testimony that he advises defendants *in every case* that they have a choice either to cooperate or to request a lawyer and forego cooperation forever. The agent did not testify that Anderson's answers to his questions would have changed the government's decision to execute the search warrant or the manner in which the search was carried out.

Second, even if Valentine's statements were not false, that is, it was true Anderson would lose the ability to provide *some* cooperation by supplying information relevant to execution of the warrant, Valentine's representations were nevertheless misleading since Anderson could still provide *other* cooperation at a later date. It is routine for individuals to provide cooperation to the government on matters completely unrelated to the crimes with which they are charged such as aiding in later government "sting" operations. The agent's statements ruled out that possibility, and may have created in Anderson's mind a false sense that he must confess at that moment or forfeit forever any future benefit that he might derive from cooperating with the police agents.

We think these kinds of misleading statements pose a serious constitutional problem. Although "[p]loys to mislead a suspect or to lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns," *Illinois v. Perkins*, — U.S. —, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990), the Supreme Court has found that affirmative misrepresentations by the police may be sufficiently coercive to invalidate a suspect's waiver of the Fifth Amendment privilege. *See, e.g., Lynumn*, 372 U.S. at 534–35, 83 S.Ct. at 920–21 (repeated misrepresentations by police that suspect would be deprived of financial aid for dependent child if she failed to cooperate rendered subsequent confession involuntary); *Spano v. New York*, 360 U.S. 315, 322–23, 79 S.Ct. 1202, 1206–07, 3 L.Ed.2d 1265 (1959) (misrepresentation by suspect's friend that friend would lose his job as a police officer if the suspect failed to cooperate rendered his statement involuntary); *cf. Leyra v. Denno*, 347 U.S. 556, 561, 74 S.Ct. 716, 719, 98 L.Ed. 948 (1954) ("already physically and emotionally exhausted suspect's ability to resist interrogation was broken to almost trance-like submission by the use of the arts of a highly skilled psychiatrist").

In *Miranda* the Court expressly disapproved deceptive stratagems such as giving false legal advice, stating: "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." *Miranda,* 384 U.S. at 476, 86 S.Ct. at 1629. And, in *Moran,* it expressly distinguished a failure of the authorities to notify a defendant being questioned that a lawyer had called the station house and tried to speak with him— grounds the Court deemed insufficient to violate *Miranda*—from "the kind of 'trick[ery]' that can vitiate the validity of a waiver." *Moran,* 475 U.S. at 423, 106 S.Ct. at 1142 (citing *Miranda* ); *see also United States v. Duvall,* 537 F.2d 15 (2d Cir.) (Assistant United States Attorney's threat of unrealistic 100–year sentence was a major factor in the decision to suppress defendant's confession), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

The government contends that Agent Valentine's conduct was no more coercive than that previously approved. It cites a number of cases to support that proposition. The government's cases are distinguishable. In *United States v. Bye,* 919 F.2d 6 (2d Cir.1990), DEA agents advised an arrestee of his *Miranda* rights, and then discussed the narcotics charges and the likely sentences the suspect faced. They advised him that if he cooperated the sentencing judge would be allowed to impose lesser sentences than those otherwise required under the Sentencing Guidelines, and that they welcomed his cooperation which would be more beneficial if given early in the investigation. *Id.* at 7. The court remanded for further proceedings but stated that on these facts defendant's waiver was voluntary. *Id.* at 9–10.

The key feature distinguishing *Bye* from the instant case is that everything the agents said in *Bye* was true; here the agent misled Anderson in order to get his confession. Every case relied on by the government is similarly distinguishable. *See United States v. Tutino,* 883 F.2d 1125, 1138 (2d Cir.1989) ("Once Tutino had been advised of his rights, the agents were free to discuss with him the evidence

against him and the reasons why he should cooperate."), *cert. denied,* —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Alvarado,* 882 F.2d 645, 649–50 (2d Cir.) (agent's statements that defendant had a daughter and it would be in her interest to cooperate, cooperation would be brought to judge's attention, and failure to cooperate could subject her to a 10–year prison sentence did not render confession involuntary), *cert. denied,* —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1989); *United States v. Pomares,* 499 F.2d 1220, 1222 (2d Cir.) (defendant "was simply informed that it would be to his benefit to cooperate" and such statements have been held to not overbear the will), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974); *United States v. Ferrara,* 377 F.2d 16, 17–18 (2d Cir.) (agent's statement to defendant that " 'if he cooperated with the United States [Attorney] I felt sure he would get out on reduced bail' " did not render defendant's confession involuntary), *cert. denied,* 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967).

*Green v. Scully,* 850 F.2d 894, is a variation on the same theme. There we held that while one of the examining officers threatened the defendant during interrogation, the other officer—in the good cop/bad cop routine—balanced out any ill-effect from the threats by presenting the defendant with truthful appraisals of his situation. We additionally found the true motivation for the confession was not the threats but the defendant's sincere desire to confess and thereby protect other people in society—including his mother—from his own future unpredictable violent acts. *Id.* at 903–04. Here those other factors are not present.

Nor can *United States v. Guarno,* 819 F.2d 28 (2d Cir.1987) give appellant any comfort. In *Guarno,* a suspect confronted by "overwhelming evidence of guilt" in a conspiracy to sell guns entered into a cooperation agreement with the government. He was not arrested, but was simply asked by law enforcement officials if he would agree to cooperate, and told that if he consulted a lawyer he would not be allowed

to cooperate because the government wanted to protect the security of its investigatory operation. He entered into an agreement containing a confession, but later sought to back out of it and moved to suppress the confession. *Id.* at 30. We upheld the denial of his motion to suppress, stating "[a] confession contained in a cooperation agreement is no less voluntary because the officers state, before they obtain the confession, that they will withdraw the offer of leniency if the suspect consults a lawyer." *Id.* at 31. The obvious differences between *Guarno* and this case are that in that case the defendant was never arrested and read his *Miranda* warnings and the police made no false and/or misleading statements to Guarno. Here, the opposite is true. Hence, *Guarno* is inapposite.

As a consequence, though the government is correct in arguing the district court erred by applying inappropriate legal standards to the facts of this case, it is wide of the mark when it asserts that Agent Valentine's conduct was no more coercive than conduct permitted by our decisions and those of the Supreme Court. Under the totality of the circumstances, Agent Valentine's statements contributed to the already coercive atmosphere inherent in custodial interrogation and rendered Anderson's first confession involuntary as a matter of law.

### III  *The Second Confession*

The district court also suppressed Anderson's second statement to agent Moorin at DEA headquarters, observing that prior to the second interrogation something more than another *Miranda* litany was required to dispel the effect of the coercive tactics used to obtain the first confession.

In *Oregon v. Elstad,* 470 U.S. at 314, 105 S.Ct. at 1296, the Supreme Court made clear that the use of coercive and improper tactics in obtaining an initial confession may warrant a presumption of compulsion as to a second one, even if the latter was obtained after properly administered *Miranda* warnings. *See Westover v. United States,* 384 U.S. 436, 494, 496–97, 86 S.Ct.

1602, 1638, 1639, 16 L.Ed.2d 694 (1966) (companion case to *Miranda* ). In deciding whether a second confession has been tainted by the prior coerced statement, "the time that passes between confessions, the change in place of interrogations, and the change in identity of interrogators all bear on whether that coercion has carried over into the second confession." *Elstad,* 470 U.S. at 310, 105 S.Ct. at 1293 (citing *Westover*). Further, we must look to the "twin rationales—trustworthiness and deterrence—" to see whether suppression of the second statement would serve the general goal of deterring unlawful police conduct and the Fifth Amendment goal of assuring the receipt of trustworthy evidence. *Id.* at 308, 105 S.Ct. at 1292.

In the instant case we have held that agent Valentine coerced Anderson's first confession with improper tactics. Moreover, nothing in the record suggests that the taint clinging to the first confession was dissipated. No significant time elapsed between the first questioning by agent Valentine and when Anderson made his statement to agent Moorin. The suspect was at all times in custody and under close police supervision with the same agents present on both occasions. Agent Moorin made no effort to dispel the original threat. In fact, his statement that Anderson "could only help himself by cooperating" only reaffirmed agent Valentine's earlier coercive statements. The district court correctly found a continuing presumption of compulsion applied to the second statement. Hence, Anderson's waiver, tainted by the earlier, coerced confession, was also involuntary and should be suppressed. Moreover, suppression of the second statement here also serves the objectives of deterrence and trustworthiness. It operates as a disincentive for police to coerce a confession by threatening a defendant with false and/or misleading statements. The fact-finding process is also enhanced since a confession obtained in the manner this one was may be untrustworthy.

## CONCLUSION

The order of the district court is accordingly affirmed.