**UNITED STATES of America,**

v.

**Sui Yin HO, Defendant.**

**No. 95–CR–0025A.**

United States District Court,
W.D. New York.

Dec. 12, 1995.

---

Patrick H. Nemoyer, United States Attorney, Joel L. Violanti, Assistant United States Attorney, Western District of New York, Buffalo, NY, for Government.

Kimberly A. Schechter, Assistant Federal Public Defender, Buffalo, NY, for Plaintiff.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on May 16, 1995. On July 18, 1995, defendant filed a motion to suppress. On November 20, 1995, Magistrate Judge Heckman filed a Report and Recommendation recommending that defendant's motion be denied.

This Court, having carefully reviewed Magistrate Judge Heckman's Report and Recommendation, as well as the transcript of the hearing and submissions of the parties, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for suppression is denied.

IT IS FURTHER ORDERED that the parties shall appear in Part II of this Court

at 9:00 a.m. on December 15, 1995 for a meeting to set trial date.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendant is charged in a one-count indictment with possession of fifty counterfeit credit cards with intent to distribute in violation of 18 U.S.C. § 1029(a)(3). The defendant, a Chinese national lawfully residing in Canada, was stopped for a border inspection while crossing the Peace Bridge at Buffalo, New York on January 10, 1995. During an examination of her purse, INS and Customs agents discovery fifty counterfeit Visa cards. She was subsequently questioned by special agents of the Customs service at which time she gave oral statements.

The defendant moves to suppress these statements on the basis that they were taken in violation of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For the reasons set forth below, defendant's motion should be denied.

### BACKGROUND

A suppression hearing was held on September 14, 1995. Special Agent Szrama testified for the government, and the defendant also testified on her own behalf. The testimony is summarized below.

### 1. TESTIMONY OF SPECIAL AGENT SZRAMA

Agent Szrama testified that he received a call from the Peace Bridge on January 10, 1995 regarding the seizure of fifty credit cards from a bus passenger's bag. He traveled to the Peace Bridge with Special Agent Hourican and several others, arriving there at approximately 11:00 a.m. When he arrived at the Bridge, he examined the bag in which the cards were found and learned that these items were found by Inspectors Lang and Vito. He then went to an interview room in which the defendant had been placed. At that time, the defendant was not in handcuffs and was not under formal arrest.

Special Agent Szrama, in the company of Special Agent Hourican, then proceeded to interview the defendant. The agent began by asking the defendant if she understood English, and defendant stated that she did. Agent Szrama then advised defendant of her rights from a *Miranda* card, admitted into the suppression hearing as government Exhibit 1. Before reading defendant her rights, he asked her if she spoke English, to which she replied that she did. When he read defendant her rights, the defendant asked him what it meant to waive her rights. He then gave her an explanation and she acknowledged that she understood. He also explained that she could stop answering questions at any time. Agent Szrama testified that he advised her that she was likely to be arrested even if she answered the questions. He denied that any threats or promises were made to her.

Special Agent Szrama then proceeded to interview the defendant. In addition to answering general background questions, the defendant denied any knowledge of the credit cards, claiming that someone else must have put them in her bag when she was at the bus station. As far as her travel plans, the defendant stated that she was going to New York City for the day to do some shopping. She did not know where she was staying but then she was going to Cleveland to visit an uncle where she would stay overnight. To get to Cleveland, she planned to rent a car. She also told the agents that she would have no reason to put credit cards in a bag if she knew the bag would be searched at the border.

Agent Szrama told the defendant that he thought she was lying. Special Agent Hourican told the defendant that if they found fingerprints on the credit cards, she was going to be in a lot of trouble. The defendant then stated that her fingerprints may be on the cards because the inspectors handed them back to her when they initially found them in her handbag.

The Agents learned that the defendant had attended school at the University of Toronto, where she had graduated. The credit cards

were issued to the Toronto Dominion Bank through the University of Toronto. The defendant was not currently working, but was living off savings.

Special Agent Szrama testified that the questioning took 35 to 40 minutes. He agreed that the defendant had an Asian accent but felt that he was able to communicate with her in English.

Cross examination established that the defendant had arrived at the bridge at approximately 10:10 a.m. that morning as a bus passenger. She went through Immigration inspection and then through Customs inspection. The customs inspectors referred her to secondary inspection.

Special Agent Szrama was at the border approximately one hour and thirty minutes before talking to the defendant. During that time, he went through her purse and ran the credit cards through a bin reader.

The card he used to advise the defendant of her rights also advises a person that they are being detained or arrested. Agent Szrama testified that he skipped that part of the card because he did not believe the defendant had been arrested. He stated that the defendant was being detained at the border under their general authority to detain.

During the interview of the defendant, she disclosed that she was taking medication for tuberculosis. Agent Szrama asked her to wear a face mask during the interview, which she did. This was a surgical mask which covered her mouth and nose. He learned that she was born in Hong Kong. He described her as being timid, quiet and reserved. He told her that she must cooperate if she wanted the agents to help her.

## 2. TESTIMONY OF THE DEFENDANT SUI YIN HO

The defendant testified that she was born in Hong Kong, and her native language is Cantonese. In 1986, she left Hong Kong and went to Canada. She has had no prior education or experience with the criminal justice system.

On January 10, 1995, she was traveling by bus over the Peace bridge. When she went through the Immigration and Customs in-spections, she had a bag with her which the agents searched. They found a package of credit cards and asked her what the package was. She advised the agents that she did not know what it was. She was then locked in a room where she was left alone in handcuffs for approximately two hours. No one advised her that she was under arrest or why she was being arrested.

After a time, the handcuffs were removed and she was taken into a second room where she spoke to two agents, one of whom was Agent Szrama. She testified that Special Agent Szrama asked most of the questions. First, he read her her rights from a card. She testified that she did not understand what it meant to waive her rights. According to what the agent told her, she understood that she could "hold on her rights and raise her hand for a question" if she was confused. She testified that she did not understand that she did not have to speak to the agents and she felt that she had to answer their questions. She also believed that she was under arrest.

The defendant testified that Agent Szrama told her that she was in serious trouble, and that she would go to jail for three to five years if she did not cooperate. He also told her that she should cooperate and that if she did he would help her. She again reiterated that she answered the agents' questions because she felt "I had to." After she gave her explanation regarding the credit cards and the agents accused her of lying, they told her that they could get a lie detector examiner to administer a lie detector examination. She became very afraid when she learned this information because she believed that this would involve placing electrical wires on her and that she could receive electric shocks. This is an additional reason why she went ahead and provided information to the agents.

As far as the defendant's background in the English language, she testified that she came to Canada in 1986 where she spoke English after she arrived. The only formal training she has received in English was a four-month course in high school entitled "English as a Second Language". She did

not learn any English when she was in Hong Kong. After she graduated from high school, she enrolled in the University of Toronto, where she received a Bachelor's Degree with a double major in Economics and Actuarial Science. She testified that she frequently had difficulty understanding her professors but she was able to do well enough on the exams to pass the courses.

The defendant then reviewed exhibit 1 and was asked to read the form and identify any words she did not understand. She said she did not understand the word "waive" in conjunction with waiving her rights. In the discussion about right to counsel, she understood that this meant that she would be given an attorney. She did not understand the term "magistrate" or "court."

### *DISCUSSION*

A waiver of *Miranda* rights is valid when it is the product of a knowing and voluntary choice. *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987). "The questions of waiver must be determined on 'the particular facts and circumstances surrounding [each] case, including the background, experience, and conduct of the accused.'" *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The government has the burden of establishing waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986); *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir.1991).

For a waiver to be voluntary, the waiver must have been "the product of a free and deliberate choice rather than an intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). Resolution of this issue requires inquiry into the conduct of the government in obtaining the statement.

A waiver of *Miranda* rights is made knowingly and intelligently only if the defendant has "a full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it." *Connelly, supra* at 167, 107 S.Ct. at 532. In order to meet this test, however, the accused need not "know and understand every possible consequence of a waiver of the 5th amendment privilege." *Spring, supra* at 574, 107 S.Ct. at 857. Rather, the accused need only be aware that "he may choose not to talk to law enforcement officers, and to talk only with counsel present, or to discontinue talking at any time." *Id.*

The existence of a limited language barrier does not necessarily preclude a finding of a knowing and intelligent waiver. *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir.1995) (waiver was voluntary where defendants "were found to have a reasonably good command of the English language."); *Campaneria v. Reid,* 891 F.2d 1014, 1020 (2d Cir.1989) (noting that although defendant spoke in broken English, and occasionally lapsed into Spanish, defendant's command of English was sufficient to understand *Miranda* warnings), *cert. denied,* 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991). Instead, the court must determine based on all the facts and circumstances whether the defendant was aware that the statements could be used against her, and knew of her right to remain silent and her right to obtain the assistance of counsel.

### 1. Was Defendant's Statement Voluntary?

Applying these standards to this case, there are two questions before the court: first, whether the defendant's statement was voluntary and, second, whether her waiver of her rights was knowing and intelligent. As to the first issue, defendant argues that her statement was coerced. Specifically, she claims that Special Agent Szrama misrepresented the sentence she was facing on the charge in that he advised her that she could go to jail for three to five years for her acts unless she cooperated. In reality, according to defense counsel, the defendant faces a maximum of six months in jail. The defendant argues that Szrama's statement was an affirmative misrepresentation of the possible jail sentence justifying suppression under

*United States v. Anderson,* 929 F.2d 96, 100–101 (2d Cir.1991).

On this issue, there is a direct conflict in the testimony. According to the defendant, Agent Szrama told her that she was in serious trouble, and that she would go to jail for three to five years if she did not cooperate. According to Agent Szrama, he advised her that if convicted, the penalty would be serious but he did not recall representing that she would go to jail for three to five years. In fact, the maximum jail sentence for the offense charged is ten years imprisonment. 18 U.S.C. § 1029(a)(3), (c). Accordingly, even assuming defendant's version of the facts, no misrepresentation was made to the defendant. Accordingly, *United States v. Anderson, Supra* does not apply.

█] The defendant also claims that the agent told her that they would help her if she cooperated. Agent Szrama confirms that this statement was in fact made to the defendant. However, this type of statement is not coercive and does not invalidate a confession. Numerous cases have found that after a defendant has been advised of his rights, the agents are free to discuss with the defendant the evidence against him or her and the reasons why he or she should cooperate. *See, e.g., United States v. Tutino,* 883 F.2d 1125, 1138 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Alvarado,* 882 F.2d 645, 649–50 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Pomares,* 499 F.2d 1220, 1222 (2d Cir.), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974).

On the basis of the evidence submitted at the hearing, I find that the government has proven by a preponderance of the evidence that defendant's waiver of her *Miranda* rights was voluntary.

**2. Was Defendant's Waiver Knowing and Intelligent?**

█] The second issue is whether defendant's waiver of her rights was knowing and intelligent. The record amply supports the conclusion that the defendant was properly advised of her rights in English by Special Agent Szrama. The question presented by this case, however, is whether Ho's English was sufficient for her to understand those rights and to make a knowing waiver of them. On this issue, the court must keep in mind the standard it must use in judging the government's case. The government's burden is by a preponderance of the evidence—i.e., by demonstrating that the facts asserted by the government are "more probably true than false."

I find that the government has met its burden of demonstrating that Ho's English comprehension was, at the time of the interview, sufficient to permit her to make a knowing waiver of her rights. It is clear from the evidence on both sides that the defendant is able to converse with people who speak only English. Significantly, at her initial appearance on this charge on January 10, 1995, the defendant was asked by the court if she spoke English and she replied that she did. She was further asked whether she was fluent in English and she replied that she was. Defendant did not request an interpreter nor did the court feel that one was warranted given defendant's representation about her ability to understand English. It is also noteworthy that the defendant graduated from the University of Toronto with a double major in Economics and Actuarial Science, where her courses were all in the English language.

I find these facts to be inconsistent with her testimony and demeanor at the suppression hearing. Accordingly, I do not find the defendant's testimony at the hearing to be credible.

Moreover, there was a direct conflict in the testimony between Special Agent Szrama and the defendant. Agent Szrama stated that he had no difficulty communicating with the defendant. Defendant advised him that she spoke English, and when she asked a question about what it meant to waive her rights, he gave her an explanation which she appeared to understand. In contrast, the defendant testified that she felt that she had to answer the questions the agents posed, that she believed she was under arrest, that she believed she would receive electric shocks if she did not answer the questions

the agents raised and she had difficulty understanding her right to an attorney.

In light of the defendant's representations at arraignment, her college education and the inconsistencies noted above, I am persuaded that Special Agent Szrama's testimony is the more credible testimony in this case. Furthermore, I am persuaded that he took seriously his obligation to administer the *Miranda* rights, that he properly administered those rights in English, and that the defendant had sufficient understanding of English to make a knowing waiver of them. In this connection, I note the plethora of cases that have found that defendants who are limited in their ability to speak English can nevertheless knowingly and intelligently waive their rights under *Miranda. See, e.g., United States v. Jaswal, supra; Campaneria v. Reid, supra; United States v. Ghafoor,* 897 F.Supp. 90 (S.D.N.Y.1995); *United States v. Yian,* 1995 WL 422019 (S.D.N.Y.); *United States v. Li,* 1995 WL 390094 (S.D.N.Y.); *United States v. Mercado,* 1989 WL 66666 (S.D.N.Y.); *United States v. Bernard S.,* 795 F.2d 749, 752 (9th Cir.1986).

The defendant cites *United States v. Kim,* 803 F.Supp. 352 (D.Haw.1992), *aff'd,* 25 F.3d 1426, *cert. denied,* — U.S. —, 115 S.Ct. 607, 130 L.Ed.2d 517 (1994), for the proposition that when a defendant does not have a sufficient understanding of the English language to understand her *Miranda* rights, this may constitute a basis to suppress the subsequent statement. The *Kim* case is not inconsistent with the analysis employed in this case. The question of whether the defendant has the capacity to understand the *Miranda* rights is a factual question which must be made on a case by case basis. For the reasons set forth above, the credibility issues in this case are resolved against the plaintiff and in favor of the government.

### CONCLUSION

For the foregoing reasons, defendant's motion should be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

DATED: Buffalo, New York
November 20, 1995