June 11, 1993

UNITED STATES of America

v.

Larry BROOKS, Sr., W. Terry Williams, Damon L. Askew, and Carlos Boddie, Defendants.

No. 92–CR–212S.

United States District Court, W.D. New York.

July 27, 1993.

Dennis C. Vacco, U.S. Atty., Thomas Duszkiewicz, Asst. U.S. Atty., Buffalo, NY, for the U.S.

Alan D. Goldstein, Buffalo, NY, for Larry E. Brooks, Sr.

Michael Battle, Asst. Federal Public Defender, Buffalo, NY, for W. Terry Williams.

Herbert Greenman, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, for Damon L. Askew.

John Elmore, Buffalo, NY, for Carlos Boddie.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court are defendant Askew's objections to the Report and Recommendation ("R & R") of Hon. Carol E. Heckman, United States Magistrate Judge for the Western District of New York, recommending that this Court deny defendant's motion to suppress defendant's arrest, as well as certain physical evidence and statements obtained in connection with the arrest. For the reasons stated below, this Court will Accept the Report and Recommendation of the Magistrate Judge.

### FACTS

The parties do not significantly object to any of the factual findings contained in Magistrate Judge Heckman's Report and Recommendation. Therefore, this Court accepts those findings, and will not repeat them here.

On December 21, 1992, this Court entered a Referral Order referring all dispositive pretrial matters to Magistrate Judge Heckman for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). On October 13, 1992, defendant filed his motion to suppress. Magistrate Judge Heckman filed a Report and Recommendation on February 23, 1993. Magistrate Judge Heckman found that sheriff department members, who were acting as agents for the Drug Enforcement Agency, had lawfully arrested defendant, had lawfully searched defendant's car, and had lawfully obtained statements from the defendant subsequent to his arrest. Magistrate Judge Heckman determined that defendant's arrest was lawful because his involvement in the crime went beyond mere presence. Magistrate Judge Heckman found that defendant was actively involved in the crime that evening. Magistrate Judge Heckman found that previous involvement in the investigation evidenced that the defendant participated on the night in question (R & R, p. 3). Further, the Magistrate Judge found that

the search of the car was supported by probable cause. The Magistrate Judge went on to find that the warrantless search was justified because exigent circumstances existed at the time the arrest was made (R & R, p. 14). Lastly, the Magistrate Judge found that the agents did not coerce defendant into making his post-arrest statements and that the statements are therefore admissible as evidence against the defendant. For these reasons, Magistrate Judge Heckman recommended that this Court deny defendant's motion to suppress the arrest, the physical evidence discovered during the warrantless search of the automobile, and the post-arrest statements.

## DISCUSSION

In his Objection to Report and Recommendation of Magistrate Carol E. Heckman ("Objections"), defendant Askew objects to the following recommendations of Magistrate Judge Heckman: (1) that the arrest of the defendant was lawful, (2) that the search of the car which resulted in the seizure of physical evidence was lawful, and (3) that the statements obtained from the defendant subsequent to his arrest, while in custody, were not coerced (see Objections, pp. 8–15).

### The Arrest

Defendant has the requisite standing to challenge the validity of the arrest since he has a personal right not to be arrested absent probable cause.

Defendant argues that the law enforcement agents based the arrest merely upon defendant's presence at the scene of the crime, and that such a basis will not support a lawful arrest under the Fourth Amendment (Objections, p. 15, citing Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). Defendant further contends that some of the factual basis for Magistrate Judge Heckman's decision that probable cause existed in this case was never brought forth in the suppression hearing. The facts in question involve an alleged agreement between defendant and agent Johnson to arrange for the purchase of cocaine that resulted in defendant's arrest. An affidavit made part of the Court's file supports the prior arrangement. Officer Johnson did not comment thoroughly about the prior meeting during the suppression hearing, although Magistrate Judge Heckman does refer to Johnson's testimony (R & R, pp. 9 and 10).

Assuming arguendo that facts in the affidavit should not have been considered by Magistrate Judge Heckman, this Court would still find that probable cause for defendant's arrest existed. Defendant drove the car in which the cocaine arrived. Neither party disputes that one of the defendants brought the cocaine out of the trunk of the car that the defendant had driven to Calico Jack's. Such involvement raises defendant's position to more than simply a bystander.

A case cited in the Ybarra opinion fails to persuade this Court otherwise. United States v. Di Re 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) involved transactions in counterfeit gasoline ration coupons. Defendant arrived at a gasoline station in a car. Defendant was sitting in the passenger seat. An informant was in the back seat and indicated to the agent that the man driving the car had sold him the counterfeit coupons. The agent arrested the passenger and the driver after conducting a search. The court held that the passenger's mere presence in the automobile did not subject him to being searched. In other words, there existed no probable cause to search the passenger.

This Court, despite the factual similarities in Di Re, does find that probable cause existed in the present case.

> Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution that" an offense has been or is being committed. Brinegar v. United States 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879. citation omitted.

In Brinegar the Court held that law enforcement officers had probable cause to arrest the defendant. Defendant was apprehended by Alcohol Tax Unit Investigators who suspected him of smuggling liquor into Oklahoma from Missouri. The investigators based probable cause on the fact that one of

them had arrested defendant previously, and had also on other occasions witnessed defendant loading his car up with liquor in Missouri. Such loadings consisted of more liquor than could be used for his own personal consumption. The investigators also testified that his car appeared weighted down.

The present case contains facts which are similar to *Brinegar*. Although the dramatic car chase is missing, the law enforcement agents in the present case knew defendant. Such knowledge was brought forth in the suppression hearing (R & R, pp. 9–10). Whereas a laden car in *Brinegar* may not have been sufficient probable cause for the arrest, when coupled with the fact that the investigators were familiar with Brinegar, the Court found probable cause. In the present case, the presence of defendant at a cocaine transaction may not in itself be sufficient to create probable cause, but because the agents knew defendant, they had probable cause to conclude that his presence went beyond mere happenstance. Further, the fact that defendant drove the car may give rise to a permissible inference that he was more than merely present. This contrasts with the facts of *Di Re*, wherein the Court suppressed the arrest of a passenger. Moreover, in *Bailey v. United States*, the District of Columbia Circuit held that the fact that defendant was a driver indicated involvement and refuted a notion that he was merely an innocent passenger. *Bailey v. United States* 389 F.2d 305, 310 (D.C.Cir.1967).[1]

At oral argument before this Court, the government contended that merely the events that night in Calico Jack's parking lot were sufficient for the police to find probable cause to make a public arrest of the defendant.

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879.

This Court finds that such a standard was met in the present case.[2] All defendants appeared to be involved in the transaction at Calico Jack's. Askew's apparent involvement was heightened by the fact that he drove the car.

*Suppression of Physical Evidence*

The parties do not dispute the facts that led up to the seizure of the cocaine from the car. The car arrived at Calico Jack's. Defendant Askew drove the car. One of the defendants retrieved a parcel from the trunk. The defendant who had retrieved the cocaine from the trunk then handed the package to defendant Brooks. It was then given to undercover agent Johnson, who examined the contents of the package and determined the contents to be cocaine. The agent then told defendant Brooks that he would have to go inside of the bar to get money. At this point, Brooks put the cocaine onto the car's front seat through an open window. The agent lifted his hat. The lifting of the hat signalled the other officers, who moved in and placed the defendants under arrest. Agent Johnson then recovered the cocaine from inside of the car.

This Court will not suppress the cocaine recovered from the car, because the agents' limited intrusion was supported by probable cause to believe that the car contained contraband, and because the scope of the intrusion was restricted solely to the package of cocaine from the front seat.

---

1. In *Bailey* three men robbed a man on the street. The police received a description of a car which had been used for the escape and pulled it over a distance away from the scene of the crime. The driver was the only person who could not be identified by witnesses, but the court accepted the argument that the fact that he was the driver indicated that his role had been that of a look out man and get-away driver. The same inference would not be permissible for a passenger.

2. Facts presented at the suppression hearings support a conclusion that the law enforcement agents knew that Askew was involved in the transaction due to prior knowledge. See T1, p. 24 and T2, pp. 20–22, 28 and 29. Furthermore, the actions taken by defendant that evening suggested more than a mere presence. See T2, pp. 36 and 38.

In order to have evidence suppressed, a defendant must show that he has standing to challenge the search, that evidence was obtained unlawfully, that the unlawful conduct resulted in the evidence sought to be suppressed (nexus), and that no subsequent event cured the violation of defendant's rights.

Here, defendant has established standing. The defendant had exclusive control of the car on the night in question (R & R, pp. 2 and 11). See *United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979) (Defendant found to have had complete control and dominion over a car by virtue of the fact that he had permission to use the car and the car key. Such dominion allowed him the right to exclude others from it and gave rise to his standing to object to a search of the car.). See also *Rakas v. Illinois* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (Defendant denied right to challenge search because status as a passenger did not give defendant a legitimate expectation of privacy.). Despite having standing, however, defendant Askew fails to show that the agents executed the search unlawfully.

Defendant contends that this Court should find the search unlawful because the police had ample time to obtain a warrant before the search, both before the arrests and after, but the police nonetheless failed to obtain a warrant. Defendant argues that the search is not made lawful by any of the exceptions to the warrant requirement. The defendant cites *United States v. Lasanta* 978 F.2d 1300 (2d Cir.1992), as support for his objection. The facts in the instant case differ substantially from *Lasanta.* Agents arrested defendant Lasanta in front of his house and then seized his car under the civil forfeiture statute, 21 U.S.C. § 881(b)(4). A later inventory search of the car uncovered cocaine. The search of the car was done without a warrant, and the government argued that the search did not have to comport with any of the exceptions to the warrant requirement because the civil forfeiture statute allowed for seizure of the automobile and consequently, its search. The Second Circuit disagreed, finding that Congress could not overrule a provision of the Constitution. A search must be supported by probable cause, and cannot be conducted solely by virtue of a statute.

One of the fundamental differences between *Lasanta* and the present case is that, in *Lasanta,* the entire car was searched. Here, only the package was recovered and searched. An exhaustive search of the car was not performed. The present case parallels *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) far more than *Lasanta.* In *Acevedo,* agents followed a man home after he picked up a package containing marijuana. Later, while police kept the house under surveillance, Acevedo, the defendant, entered the house and exited carrying a bag approximately the same size as one of the marijuana packages the agents had previously observed. The defendant put the bag in his car trunk. The police subsequently stopped the defendant and recovered the drugs from the car. The police officers did not have a warrant to search the car. The Supreme Court held that the search was constitutional.

> In the case before us, the police had probable cause to believe that the paper bag in the automobile's trunk contained marijuana. That probable cause now allows a warrantless search of the paper bag. The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment.... The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. *Id.* 500 U.S. at ——, 111 S.Ct. at 1991.

*Acevedo* reveals that the search in the instant case passes constitutional muster. Justice Scalia noted in his concurrence that the Fourth Amendment protects against unreasonable searches, not warrantless searches. *Id.* at ——, 111 S.Ct. at 1992.

In the present case, the police had probable cause to recover the cocaine package from the front seat of the car, according to the standard enunciated by *Acevedo.* The agent already knew what was in the package

before he seized it. Therefore, the agent in this case had more cause to recover the evidence than the agent in *Acevedo*.

Further, the search of the car was not an exhaustive search like in *Lasanta*, but only for and of one specific item like in *Acevedo*. Therefore, this Court will not suppress the product of the search. Additionally, this Court need not address exceptions to the warrant requirement, despite the fact that such exceptions may exist in this case. The search of the car conformed to the Fourth Amendment because it was reasonable, since the package was known to contain contraband and had been placed on the front seat through the open window.

This finding by this Court does not reject the holding by Magistrate Judge Heckman that exigency existed at the time of the arrest and therefore the search performed later would still meet the exception. *Chambers v. Maroney* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Magistrate Judge Heckman correctly found that at the moment that probable cause for the arrest of the drugs existed, the moment that Agent Johnson examined the package, exigent circumstances presented themselves. Johnson was alone with the defendants who had just placed the drugs in the car. He could have performed a search at that moment due to the exigency. Officer Johnson properly delayed the making of the arrests to insure that the undercover operation succeeded. *U.S. v. Mackey* 626 F.2d 684 (9th Cir.1980). See R & R, p. 14. The exigent circumstances carried over until when Johnson actually performed the search.

*Suppression of Custodial Statements Subsequent to Arrest*

Magistrate Judge Heckman was correct in her determination that defendant was not improperly coerced into making an incriminating statement to law enforcement officials on the night of his arrest. Magistrate Judge Heckman carefully considered all the relevant factors, and concluded that the facts of the present case are closer to those in *United States v. Bye,* 919 F.2d 6 (2d Cir.1990) than those in *United States v. Anderson,* 929 F.2d 96 (2d Cir.1991).

This Court agrees. This Court has thoroughly reviewed the transcript of the suppression hearing, and has considered the statements that Agent Peterson made to defendant Askew. After doing so, this Court has concluded that, under the totality of the circumstances, defendant's statement was not a product of coercion. Unlike the defendant in *Anderson*, defendant Askew was never presented with a misleading "now or never" ultimatum, and his will was not overborne. See *Anderson*, 929 F.2d at 99 (court must determine whether statements were "obtained under circumstances that overbear the defendant's will."). Therefore, defendant's motion to suppress his statements will be denied.

### CONCLUSION

The defendant's arrest was lawful. Although defendant's mere presence in the car would not be sufficient to support probable cause, the additional circumstances presented to the law enforcement agents was sufficient to support probable cause. This Court makes such a conclusion independent of the criminal complaint contained in the file. The search of the car was also lawful because it was based on probable cause, and was a search for a specific item rather than an exhaustive search of the car. Finally, defendant's custodial statements were lawful, because the law enforcement officials did not improperly coerce defendant or overbear his will. Therefore, defendant Askew's suppression motion will be denied in all respects.

### ORDER

IT HEREBY IS ORDERED that this Court ACCEPTS the Report and Recommendation of Magistrate Judge Heckman filed on February 26, 1993.

FURTHER, that defendant Askew's suppression motion is DENIED in all respects.

SO ORDERED.

### REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendant Askew moves to suppress the statement made following his arrest. Defen-

dant Askew also moves to suppress the narcotics seized at the time of his arrest, alleging that he was arrested without probable cause and that the narcotics were seized as a result of a warrantless search in violation of the Fourth Amendment. For the reasons set forth below, it is recommended that the suppression motions be denied.

### BACKGROUND

A suppression hearing was held on November 25, December 8 and December 15, 1992. Following the hearing, a briefing schedule was set, and the motions were argued in open court on February 16, 1993. During the course of the hearing, the Government presented the testimony of Deputy Sheriff Charles Torres, Deputy Sheriff William Nichols, Deputy Sheriff Michael E. Johnson (all working as part of a DEA Task Force), and DEA Agent Mark Peterson. In addition, Defendant Askew testified that on the night of his arrest he was driving a Chevy Baretta owned by his mother, which his mother had given him exclusive permission to drive.

There are three counts in the indictment. The first charges all four Defendants with conspiring on August 27 and August 28, 1992 to distribute 500 grams or more of cocaine in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. The second count charges Defendants Williams, Askew and Boddie with distribution of cocaine on August 27, 1992, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The third count charges Brooks, Williams and Askew with unlawful distribution of 500 grams or more of cocaine on August 28, 1992, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

The indictment followed criminal complaints which were filed against the Defendants on August 28, 1992. According to the affidavit of Deputy Sheriff Michael Johnson in support of the complaint, on August 27, 1992, Johnson purchased approximately one ounce of cocaine from Defendants Williams, Askew and a third unidentified subject, later identified as Carlos Boddie. At the time of this purchase, arrangements were made to purchase an additional one kilogram of cocaine from Askew and Williams later in the evening at a restaurant in the Town of Hanover, New York.

Pursuant to the prior arrangement, at approximately 1:10 a.m. on August 28, 1992, Johnson met with Defendants Williams, Askew and Brooks in the parking lot of the restaurant in Hanover. At that time, Brooks handed 1,005 grams of cocaine to Johnson. The three Defendants were then arrested by DEA Task Force Agents. Boddie was arrested when he appeared in court to witness the arraignments of codefendants Brooks, Williams and Askew.

### SUPPRESSION HEARING TESTIMONY

The testimony at the suppression hearing established the following facts. Deputy Johnson testified that on August 27 and 28, 1992, he was operating in an undercover capacity pretending to be a purchaser of controlled substances (T2 at 20).[1] Johnson arranged a meeting in the early morning hours of August 28, 1992 with Defendants Williams, Askew and Brooks at the Calico Jack's Restaurant in Hanover, New York. Johnson testified that a black Chevy Baretta driven by Askew pulled into the parking lot, with Williams in the front seat as a passenger and Defendants Brooks in the back seat. Johnson recognized Askew and Williams from a meeting he had with them at approximately 8:00 p.m. that evening, August 27. The black Chevy had been used for the previous meeting as well.

Williams introduced Brooks to Johnson and then Johnson spoke to Brooks about the kilogram of cocaine (T2 at 23). Brooks, Williams and the agent were standing outside the car. The agent asked to see the cocaine, and one of the Defendants retrieved a package from the trunk of the car. At first, Johnson testified that he believed that it was Askew who retrieved the package from the trunk of the car and handed it to Brooks (T2 at 23). Subsequently, Johnson

---

**1.** References are to pages of the suppression hearing transcript. T1 is proceedings of November 25, 1992, T2 is proceedings of December 9, 1992, and T3 is proceedings of December 15, 1992.

testified that his attention was on Brooks and that he now could not state with certainty that Askew handed Brooks the package from the trunk of the car (T2 at 30–32).

Brooks then handed the package to Johnson (T2 at 24). The package was wrapped in brown paper with a piece of duct tape. Johnson peeled the duct tape back, examined the contents of the package and satisfied himself that the package indeed contained cocaine. He then handed the package back to Brooks. Brooks tossed the package through an open window into the front passenger seat of the car.

At that point, the three Defendants were arrested. After their arrest, Johnson returned to the car and took the cocaine out of the front passenger seat. The package was subsequently tested and proved to be cocaine.

On cross examination, Johnson testified that "I can't be 100% totally positive that Mr. Askew was the one who retrieved it from the trunk. But someone walked to the trunk, handed the package to Mr. Brooks, and Mr. Brooks handed it to me" (T2 at 30). Johnson later repeated that he did not remember who retrieved the package from the trunk (T2 at 31–32).

The testimony at the hearing also established that after the Defendants were placed under arrest at the parking lot of Calico Jack's, they were taken to the Chautauqua County Sheriff's Department substation in Hanover for processing. Deputy Sheriffs William Nichols and Charles Torres interviewed Askew.

Deputy Torres testified that he read Askew his *Miranda* rights by using a preprinted state police *Miranda* rights card (T1 at 19). Askew stated that he understood his rights (T1 at 20–21). A copy of the *Miranda* card was marked Government Ex. 1 at the hearing.

After Askew was advised of his rights, he was questioned by Deputy Nichols. Askew provided biographical information as to his address, date of birth, etc. and then stated that "he was being paid about $500.00 to drive these guys up to Calico Jack's" (T1 at 22). Torres then left the room and had no

further knowledge of conversations with Defendant Askew (T1 at 22).

On cross examination, Torres testified that even though during other custodial interrogations he had other defendants sign written waiver of rights forms, no such form was used in this case (T1 at 38). Torres did not ask Askew how far he had gone in school nor did he ask him whether he had been read his *Miranda* warnings on previous occasions (T1 at 41). Torres also testified on cross examination that there was some discussion of the Defendant's cooperation before he left the room, but he was not sure of the details (T1 at 43–45, 52–54).

Deputy Sheriff Nichols testified that on August 28, 1992, he assisted in the arrest of the Defendants, including Defendant Askew, in Hanover (T2 at 4). After Askew was advised of his rights, he stated that he knew nothing about the drugs and had just been making $300.00 or $500.00 for driving some people to Hanover (T2 at 5).

During cross examination, Nichols testified that after the Defendant was given his rights, Nichols had asked the Defendant if he knew what kind of trouble he was in and stated that he was "in serious trouble" (T2 at 12). The Defendant acknowledged that he was in trouble, but stated he was only driving a car. Nichols advised Askew that he could probably help himself out if he did in fact cooperate (T2 at 15) but that he would have to speak to Agent Peterson about any benefits (*id.*).

Askew told Nichols that "he kind of indicated he did" wish to cooperate (T2 at 12) but did not want anyone else on the street to find out (T2 at 6). Nichols then asked Askew if he knew where the cocaine came from and Askew stated, "Ty Brown" (*id.*). At that point, Nichols summoned Agent Peterson because he was not familiar with the background of the entire case (T2 at 6). After Peterson's arrival, Nichols went in and out of the room and therefore could not testify as to further statements made by the Defendant.

Peterson testified that he was at the Hanover substation and was advised by Nichols that Askew was interested in cooperating and answering questions that evening (T3 at

5). After entering the room, Peterson asked whether Askew had been given his *Miranda* warnings and Askew stated that he had in fact been given those warnings (T3 at 5). Peterson asked Askew if there was anything that he could do on that particular evening to assist the agents in their investigation. Askew responded that he thought it would be hard because he had gone through an intermediary and would have to pay for the first kilogram to obtain additional quantities (T3 at 6). The intermediary was identified as Co–Defendant Larry Brooks, who had obtained the kilogram of cocaine from the source, Tyrone Brown (T3 at 7).

On cross examination, Peterson testified that Askew had been arrested at approximately 1:00 a.m. on August 28, 1992 and arrived at the substation about 15 minutes later (T3 at 12). Peterson began to speak to Askew at approximately 1:45 a.m. (T3 at 13). Peterson testified that he let Askew know that he was looking for cooperation to occur that evening (T3 at 19). Peterson suggested to Askew that if something could not be done that evening, that Askew would not be able to benefit from any cooperation (T3 at 20). Peterson told Askew that the best way, if not the only way, he could help himself out would be by cooperating (T3 at 21). However, Peterson could not recall the specific words he used with Askew (T3 at 20). Once again, Peterson indicated to Askew that his cooperation would have to occur that evening (T3 at 22).

### DISCUSSION

Defendant Askew makes three arguments in support of his motion to suppress. First, he argues that there was insufficient probable cause for his arrest based on his mere presence at the scene. Second, Askew argues that the seizure of the cocaine from the car should be suppressed because it was a warrantless search in violation of his Fourth Amendment rights. Finally, Askew argues that his statements to law enforcement agents at the Sheriff's substation in Hanover were taken in violation of his Fifth Amendment rights.

Each of these arguments will be addressed in turn.

1. *Probable cause to support the arrest of Defendant Askew.*

■ It is undisputed that Askew was present with Brooks and Williams when they were arrested in Hanover, New York, and that one kilogram of cocaine was seized immediately after the arrest. However, it is also true that Deputy Sheriff Johnson was unable to state with certainty that Defendant Askew opened the trunk of the car and handed the package of drugs to Co–Defendant Brooks. Indeed, there was no testimony of any statements or conversation involving Askew at the scene of the crime.

The record contains two very brief references to Askew's previous involvement in the investigation. Johnson testified that he had known Askew before meeting him in the early morning on August 28 based on a meeting that had occurred at approximately 8:00 the previous day, August 27 (T2 at 21). Johnson also testified that he had been previously negotiating with Defendants Williams and Askew (T2 at 29). Both of these statements were made without any further elaboration.

Defendant Askew therefore argues that there was insufficient probable cause to support his arrest, stating that his mere presence at the scene of the crime is insufficient. *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

This argument is not supported by the record. First, Askew's involvement in the narcotics sale on August 28 goes beyond mere presence. He was driving the car in which the Defendants arrived to meet Deputy Johnson and which was used to transport the drugs. Second, the affidavit in support of the complaint, which is part of the Court's file in this case, clearly shows that Defendant Askew was involved in a sale of narcotics to Johnson on August 27, the previous evening. Finally, Johnson examined the package which had been located in the trunk of the car and determined that it contained cocaine. All of these facts demonstrate that the Government had probable cause to arrest Defendant Askew on August 28, 1992.

2. *Seizure of the cocaine from the car.*

Defendant argues that the cocaine seized from the car must be suppressed because it was obtained without a search warrant.

█ At the outset, it is important to address the Government's point that the Defendant has failed to establish standing. At the date of oral argument on the suppression motion, the Defendant was allowed to reopen the suppression hearing record to establish that the car in question is owned by Defendant's mother and that the Defendant had been given exclusive permission to drive the vehicle. This is sufficient to establish standing to challenge the seizure of the cocaine from the car. *See, e.g., United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.), *cert. denied* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).

In support of his argument for suppression, the Defendant relies on *United States v. Lasanta,* 978 F.2d 1300 (2d Cir.1992). In that case, the defendant was arrested on the doorstep of his house pursuant to an arrest warrant. Agents then seized his vehicle, which was parked in the driveway, without a warrant. Upon conducting an inventory search of the vehicle, a canister containing cocaine was discovered under the driver's seat.

In justifying this warrantless seizure of the car, the Government relied on the civil forfeiture statute, 21 U.S.C. § 881(b)(4), and argued that it was unnecessary for the government to establish any of the traditional exceptions to the Fourth Amendment's warrant requirement. The Second Circuit disagreed, finding that a warrantless seizure must meet one of the recognized exceptions to the Fourth Amendment's warrant requirement even when based on the forfeiture statute. The Court expressly found that no exigent circumstances existed because the defendant was already under arrest, and that none of the other exceptions to the warrant requirement were present. Accordingly, the Court held that the evidence obtained as a result of the seizure had to be suppressed.

The Government argued in *Lasanta* that the seizure was justified because probable cause existed to believe that the vehicle had been used in connection with narcotics trafficking. This apparently was unchallenged by the defense. 978 F.2d at 1303. But, according to the Second Circuit, probable cause to believe the car had been used in drug trafficking is not enough to search the car. *Id.*

█ The Second Circuit in *Lasanta* did not cite or discuss the Supreme Court's 1991 decision in *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). In that case, the Supreme Court held that all automobile searches are governed by a singular rule. Overruling *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Court stated: "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Id.,* 500 U.S. at ——, 111 S.Ct. at 1991, 114 L.Ed.2d at 634. In other words, if the police have probable cause to believe that a container located in the car seat contains a controlled substance, that probable cause allows the police to enter the car, seize the package and open it. A search of the entire vehicle, however, would not be supported by probable cause and would be unreasonable under the Fourth Amendment. *Id.*

The *Acevedo* case discussed this rule as the "automobile exception" to the Fourth Amendment warrant requirement. The Court's reasoning appeared to be based on exigent circumstances—i.e., that cars are movable objects and that evidence may readily be lost if warrantless searches are not permitted. The Supreme Court did not address the question of whether the "automobile exception" would apply if there were no exigent circumstances.

█ In this case, Deputy Sheriff Johnson had probable cause to believe that the package located on the front passenger seat of the car contained cocaine. He had previously discussed a drug transaction with Brooks, examined the package, and determined that it appeared to be cocaine. Johnson then handed the package back to Brooks, who threw it into the car and onto the passenger seat through an open window. The Defen-

dants were then arrested and the package was retrieved from the car.

Defendant nevertheless argues that there was plenty of time to obtain a warrant because, like *Lasanta*, the occupants of the car had all been placed under arrest, and there were no exigent circumstances requiring a search prior to obtaining a warrant. According to Defendant, *Acevedo* does not apply to justify the search because there was no danger that the car would be driven away with the contraband inside.

It is true that exigent circumstances did not exist at the time the search was conducted. All of the Defendants were in custody, including the driver of the vehicle, and there was no risk that the vehicle would be driven away with the contraband inside. However, the exigency requirement was refined by the Supreme Court in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *Chambers*, the Court found that if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct the search either immediately or some time after the driver had been arrested, so long as both probable cause and exigent circumstances existed at the time the vehicle was first stopped.

The same reasoning applies in this case. At the time that Brooks placed the package on the front seat of the car, Johnson would have been entitled to seize the package: having just examined it, he had probable cause to believe it contained cocaine, and at that time exigent circumstances were present. Instead, Deputy Johnson reasonably decided to delay seizure of the package of cocaine until after the Defendants were placed under arrest in order to make sure the undercover operation succeeded. *See, e.g., U.S. v. Mackey*, 626 F.2d 684 (9th Cir.1980).

This case is distinguishable from *Lasanta* because there the drugs were discovered incidentally during an inventory search of the car after the defendant had been arrested, and the presence of the drugs was not the basis for the arrest. Or, stated another way, in *Lasanta* exigent circumstances never existed prior to the Defendant's arrest because the agents were unaware of the presence of drugs in the car. These factual differences are significant and provide a basis for distinguishing these two cases.

Accordingly, the seizure of the drugs was permissible under *Chambers, Acevedo* and *Mackey*.

3. *Statements to Law Enforcement Agents.*

Defendant contends that immediately after he was given his *Miranda* rights, the agents at the substation in Hanover told him that he could be "facing a lot of jail time" and in a "lot of trouble," but that he could only help himself by cooperating immediately with the investigation. Defendant contends that the agents thereby coerced him into revealing details which implicated him more directly in the crime, and that his incriminating statements should be suppressed as involuntarily made.

Defendant relies on *United States v. Anderson*, 929 F.2d 96 (2d Cir.1991), which held that statements by law enforcement officers advising the defendant that he must choose between having an attorney present or forego any favorable treatment for cooperating in the investigation rendered the defendant's confession involuntary. According to the Second Circuit, such statements by the officers are false and misleading since it is commonplace for defendants represented by counsel to cooperate with authorities, and since individuals routinely provide cooperation on matters completely unrelated to the crimes with which they are charged. Thus, according to the Court, such statements "may have created in [the defendant's] mind a false sense that he must confess at that moment or forfeit forever any future benefit that he might derive from cooperating with the police agents." 929 F.2d at 100.

As *Anderson* recognizes, in assessing the voluntariness of a defendant's waiver of his right to remain silent, the reviewing court must determine whether the statements were "obtained under circumstances that overbear the defendant's will" at the time they were given. *Anderson, supra*, 929 F.2d at 99. "Whether a confession is a product of coercion may only be determined after a careful evaluation of all the surrounding circum-

stances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Id.* (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)).

The record in this case does not reveal any particularly overbearing circumstances pertaining to the conditions of interrogation, other than the inherently coercive custodial setting in which the statements were obtained. Nor does it reveal any particular characteristics of the accused, such as his familiarity or lack of familiarity with the criminal process or his knowledge of the rules regarding the benefits of cooperating with the government, which assist the court in determining whether the statements were freely given. Thus, the crucial factor to consider, as in *Anderson,* is the conduct of the law enforcement officials during their interviews of Defendant.

The record reveals that Defendant was advised of and understood his *Miranda* rights (T1 at 19–21). Agent Nichols then asked Defendant if he knew "he was in a lot of trouble" (T2 at 5) and "if he knew what kind of trouble he was in" (T2 at 12). Defendant responded that he believed he was in trouble but that he was only driving the car (T2 at 12–13). Nichols then asked Defendant "if he wanted to cooperate" (T2 at 14) and "told him he probably could help himself out if he cooperated" (T2 at 15). Defendant indicated that he might be interested in cooperating but that he did not want anyone "on the street" to find out (T2 at 6 at 13).

At that point Agent Peterson was brought in to interview Defendant because of his familiarity with the investigation (T2 at 6). Agent Peterson asked Defendant "if there were anything he could do on that particular evening to assist us in furthering our investigation with regard to obtaining additional quantities of cocaine from the source of supply" (T3 at 6). Defendant responded that it would be difficult to obtain additional cocaine since it would involve an "intermediary" and would require payment of the balance owed for the kilogram seized (T3 at 6). He identified the intermediary and the source (T3 at 7).

On cross-examination, defense counsel elicited Peterson's testimony that the "tone" of the conversation between Peterson and Defendant was that "if something couldn't be done that evening, [Defendant] wasn't going to get the benefit of this cooperation that [Peterson was] specifically looking for" (T3 at 20). However, Peterson testified that he did not "verbally express[ ] that to [Defendant]. He may have inferred that from our conversation."

As the government points out, the conduct of the agents here is similar to the conduct of law enforcement officials found not to be unduly coercive in *United States v. Bye,* 919 F.2d 6 (2d Cir.1990). In that case, the agent discussed the sentencing guidelines with the defendant and informed him that if he cooperated, the sentencing judge could impose a lesser sentence than otherwise required under the guidelines, and that "it would be more beneficial to him if he cooperates early in the investigation." *Id.* at 7. The Court found that the mere mention of the possible sentence and the benefits to be derived from early cooperation did not convert an otherwise improper encounter into a coercive or overbearing one. *Id.* at 8.

Upon review of the record, I agree with the government that this case is closer to *Bye* than it is to *Anderson.* The *Anderson* case was primarily concerned with the false and misleading nature of the agent's repetitive positing of a "now or never" choice to the defendant—i.e., that the defendant could choose *either* to cooperate with the government *or* to contact an attorney and forego cooperation forever. Here, no such choice was presented to Defendant. Despite defense counsel's efforts on cross-examination, this court cannot infer that Agent Peterson ever gave Defendant this type of "now or never" option. Peterson may, by the "tone" or tenor of the conversation, have encouraged Defendant to cooperate "that evening" in order to benefit, but the record does not support a finding that Defendant was directly misled into believing that he had no choice but to cooperate then and there or forfeit any chance of ever obtaining such benefits.

Accordingly, I find that the prosecution has sustained its burden of demonstrating by a preponderance of the evidence that Defendant waived his *Miranda* rights, and that the waiver was not the product of coercion on the part of the officers conducting the interviews.

### *CONCLUSION*

Based on the foregoing, it is recommended that Defendant Askew's suppression motion be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

**SO ORDERED.**

**DATED: Buffalo, New York**
February 23, 1993