**UNITED STATES of America**

v.

**Keith S. INGALLS.**

**Cr. No. 97 CR 46–1.**

United States District Court, D. Vermont.

Oct. 23, 1997.

Mark Alan Kaplan, Jarvis & Kaplan, Burlington, VT, for defendant.

Paul J. Van de Graaf, Office of U.S. Atty., Burlington, VT, for U.S.

## OPINION AND ORDER

SESSIONS, District Judge.

On August 13, 1997, Defendant Keith S. Ingalls filed a Motion to Suppress All Statements Made by Defendant to Agents of the Government (Paper # 10) in connection with his prosecution for distribution of child pornography. In his suppression motion, Ingalls claims that he was not properly advised of his Miranda warnings and that his waiver of his Fifth Amendment rights was involuntary. The Court conducted an evidentiary hearing on September 29, 1997. Based upon

the evidence elicited at the hearing, together with arguments and memoranda of counsel, the Court hereby DENIES Ingalls' Motion to Suppress.

## I. *Factual Background*

On December 9, 1996, Donald A. Daufenbach, a Senior Special Agent for the U.S. Customs Service, obtained a warrant signed by United States Magistrate Jerome J. Niedermeier to search the Ingalls' business in Newport, Vermont, and their residence in Albany, Vermont. Agent Daufenbach was assigned to the Office of Enforcement located in Salt Lake City, Utah, and was primarily responsible for drug smuggling and child pornography investigations. Together with Customs Agents Thomas Donnelly and William Sawyer, Vermont State Police Detective Sergeant Roland Prairie and Newport Police Chief Paul Duquette, Daufenbach executed the warrant at Ingalls' place of business on December 10, 1996.

Ingalls was present at his place of business during execution of the search warrant. Agents Daufenbach and Donnelly spoke with Ingalls in his office. The office measured approximately 8 feet by 15 feet. The agents closed the door to the outer office, identified themselves and advised Ingalls that they had a search warrant for the business. Daufenbach informed Ingalls that he was under arrest.

The sequence of statements made to and by Ingalls then becomes uncertain. Daufenbach testified that he advised Ingalls of his Miranda rights soon after arrival and prior to any statements made by Ingalls. Donnelly testified that Ingalls asked what was to happen to him immediately after being told he was being arrested. Daufenbach told him that he was to be taken to the federal courthouse that day to appear before the magistrate. Ingalls also asked about the seriousness of the crime, to which Daufenbach answered that it was a ten year felony. According to Donnelly, Daufenbach then advised Ingalls of his Miranda rights.

Ingalls offered a different sequence. After being told that he was under arrest, Ingalls asked Daufenbach if he should get a lawyer. Daufenbach told him that he had the right to an attorney, that he could remain silent and that anything that he said could be used against him. However, Daufenbach then advised him that a lawyer might not be necessary. Daufenbach described the benefits of cooperation and indicated that the presence of counsel would jeopardize cooperation. Later in the interrogation, Ingalls felt that the agents might rip through his office and seize all of the computers unless he cooperated. However, he also described Daufenbach as an excellent salesperson who made Ingalls feel that he was a friend who could be trusted. Ingalls indicated that he did receive Miranda warnings, although they were not consistent with his understanding of standard Miranda warnings. He acknowledged understanding all of his rights.

Daufenbach's common practice was to read from a Miranda card, although he could not be certain that he did so in this instance. He advised Ingalls of all of the constitutional protections afforded by Miranda. Although Daufenbach did not obtain a written waiver of Miranda rights from the defendant, Ingalls did indicate verbally that he understood his rights and wished to speak with the investigators. Ingalls was extremely nervous and raised his hands, indicating that he wished to make a statement. He then told the investigators that he had been molested by a principal in elementary school and that apparently no one believed him.

The agents interviewed Ingalls in his office for approximately thirty minutes. There is no evidence to suggest that the agents became intimidating or coercive. The tone of the discussion remained respectful and calm. According to Ingalls' testimony at the hearing, he decided to make a statement to persuade the agents of his innocence in the hope of avoiding charges being filed.

Ingalls remained extremely cooperative throughout the interrogation. Ingalls made a number of incriminating statements concerning the use of the Internet in the distribution of child pornography. He assisted the agents in the search and seizure of his computers.

Ingalls expressed concerns over being handcuffed and about potential publicity soon

before being transported to the courthouse. The agents told him that no press releases would be sent. He was permitted to leave the building without handcuffs.

## II. *Discussion*

■ The United States Supreme Court mandated that an accused be advised of Fifth Amendment rights prior to being subjected to custodial interrogation in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The government bears the burden of proving in light of the totality of the circumstances that law enforcement officers properly advised the accused of those rights and that he or she made a knowing and voluntary waiver. *Moran v. Burbine*, 475 U.S. 412, 420–21, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986); *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986).

■ To show a valid waiver, the government must prove from the totality of circumstances that (1) the relinquishment of the defendant's Miranda rights was voluntary, and (2) that the defendant had a full understanding of the right being waived and the consequences of waiving that right. *Moran v. Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141. Such proof must be by a preponderance of evidence. *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir.) *cert. denied*, —— U.S. ——, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996). Promises of leniency, without more, do not invalidate a Miranda waiver. *United States v. Guarno*, 819 F.2d 28, 31 (2d Cir.1987). In *United States v. Bye*, 919 F.2d 6, 9 (2d Cir.1990), the Second Circuit held that statements by law enforcement officers to defendants concerning the benefits of cooperation are merely one factor in the totality of circumstances that determine whether a confession is voluntary. *See also United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir.1995).

In *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court addressed equivocal assertions of Fifth Amendment rights during custodial interrogation. The defendant in that case, during questioning, made an equivocal reference to getting a lawyer, thereby raising the issue of whether he actually invoked his right to counsel. The Court was concerned with establishing a "bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information." 512 U.S. at 461, 114 S.Ct. at 2356 It required that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459, 114 S.Ct. at 2355. The Court went on to say: "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning." *Id.* at 461–62, 114 S.Ct. at 2356.

The parties do not dispute that Ingalls was in custody at the time of his interrogation. The evidence is essentially uncontested that Daufenbach advised Ingalls of his Miranda rights and that Ingalls understood those rights. The parties do dispute whether Ingalls' waiver was freely and voluntarily made.

■ The Court finds that Ingalls freely and voluntarily waived his Fifth Amendment rights. At the outset, the environment surrounding the interrogation was not coercive. Miranda rights were read to Ingalls early in the conversation. There is no evidence that the agents became abusive. No threats were made to Ingalls which induced him to waive his rights. Further, Ingalls acknowledges that the agents explained his constitutional rights and that he was fully aware of them. More importantly, he also acknowledges deciding to cooperate and the reasons for his decision. He candidly testified in the hearing that he chose to speak with the agents in the hope of persuading them to defer prosecution.

Ingalls' testimony that the agents were coercive was not credible. First, Ingalls objected to Daufenbach's ability to become his friend and to get him to trust the agent. Ingalls also thought that he could persuade the agents to defer prosecution by talking with them. Both of those observations are entirely inconsistent with threatening officers in a coercive environment. By all accounts, Ingalls was extremely nervous. It may very well have been his impression that he was

being implicitly coerced. However, there is no evidence of behavior of the officers which would substantiate an atmosphere of coercion and intimidation.

Ingalls' reliance upon promises of leniency in return for waiver of Miranda rights and cooperation does not support a Miranda violation. Daufenbach did explain the possible penalties for the charged offense and the potential benefits of cooperation. Such assurances did not even rise to the level of promises of leniency, nor did such statements constitute threats or coercion. Although Ingalls testified that he was concerned about being handcuffed and about adverse publicity, his decision to waive his rights was made in the hope of appealing to the compassion of the agents. The waiver was the result of a clear choice made by Ingalls, and was not the product of improper behavior on the part of the agents.

Finally, Ingalls never made an unequivocal assertion of his Fifth Amendment rights. His question concerning the wisdom of obtaining counsel did not rise to the level of an assertion of that right.

The Court is concerned that Agent Daufenbach did not obtain a written waiver from Ingalls and that he failed to take contemporaneous notes of the conversation. Daufenbach waited for a number of months to elapse before writing his notes concerning the arrest and interrogation of Ingalls. Such procedures are highly suspect and bring into question Daufenbach's testimony concerning the events in question. However, Agent Donnelly was also present during the entire questioning of Ingalls, wrote nearly contemporaneous notes of the interview and confirmed the reading of the Miranda rights and the voluntariness of the waiver.

III. *Order*

For the reasons stated above, the Court DENIES Defendant's Motion to Suppress All Statements Made by Defendant to Agents of the Government (paper 10).