**UNITED STATES, Appellee,**

v.

**Pawel Zygmunt SZYMANIAK,
Defendant–Appellant.**

**No. 1296, Docket 90–1620.**

United States Court of Appeals,
Second Circuit.

Argued April 23, 1991.
Decided May 30, 1991.

Thomas J. Spargo, Albany, N.Y., for appellant.

Bernard J. Malone, Jr., Asst. U.S. Atty., N.D.N.Y., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., and Barbara D. Cottrell, Asst. U.S. Atty., on the brief), for appellee.

Before TIMBERS, NEWMAN and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal, from a judgment after a jury trial, entered October 11, 1990, in the Northern District of New York, Con. G. Cholakis, *District Judge*, convicting appellant of one count of attempted transportation of an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(B) (1988).

On February 26, 1990, Szymaniak entered the United States from Canada and, shortly thereafter, was arrested for attempted transportation of an alien. He was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). At trial, a government agent testified, on the government's case-in-chief, that Szymaniak "was very vague and did not answer our questions, would not tell us any information regarding his activities." The same agent testified that Szymaniak did not wish to speak to the agents but instead stated that " 'I'm in a lot of trouble and I want to speak to my lawyer.' "

On appeal, appellant contends, *inter alia*, that introduction of the statement that he was in a lot of trouble and wanted to speak to a lawyer constituted a violation of his fifth amendment rights. He also contends that admission of the statement about Szymaniak being "vague" and not answering questions constituted error. He asserts that he is entitled to a new trial.

For the reasons that follow, we reverse appellant's conviction and remand the case for a new trial.

I.

We shall set forth only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Appellant Szymaniak is of Polish descent. He was a taxi driver in New York City prior to the events involved in the instant case. On February 26, 1990, at approximately 1:35 a.m., Szymaniak appeared at the Trout River port of entry in upstate New York, seeking entry into the United States from Canada. Szymaniak told Victor Sciarrino, the Immigration and Naturalization inspector on duty at the time, that he had been visiting friends in Canada and was on his way to visit another friend in Lake Placid, New York. Szyman-

iak was granted entry into the United States.

Although Szymaniak's papers were in order and he was admitted into the United States, Inspector Sciarrino contacted the United States Border Patrol and gave them a description of the car and direction in which Szymaniak was travelling. Inspector Sciarrino was suspicious of Szymaniak because there had been recent smugglings of Polish nationals into the United States in the area.

At about the same time that Inspector Sciarrino transmitted the information about Szymaniak, Border Patrol Agent Timothy Carkner received notification that sensors had detected a border crossing near an abandoned Conrail railroad bed. Agent Carkner encountered Szymaniak's car in the area in which the sensor was located. The car was either travelling very slowly or not moving at all. Agent Carkner turned his car around to follow Szymaniak. When he did this, the agent noticed fresh footprints in the snow.

Agent Carkner stopped Szymaniak and identified himself. He asked Szymaniak if he was picking anyone up at the railroad bed. Szymaniak replied "I don't know that guy." Szymaniak had a map and a flashlight in the front passenger seat of his car. Agent Carkner and Szymaniak returned in the agent's car to the abandoned railroad bed. Agent Carkner questioned Szymaniak as to the identity of the illegal entrant. Szymaniak again stated that he didn't "know the guy." Soon thereafter, Agent Carkner and two of his colleagues who had arrived on the scene discovered Alexy Dembowski lying in the snow in sub-zero temperatures at the bottom of a culvert.

The agents returned to the Border Patrol office with Szymaniak and Dembowski. Szymaniak was advised of his *Miranda* rights when he was brought to the Border Patrol office. On direct examination at trial, Agent Carkner testified as a government witness as follows:

"Q: Did Mr. Szymaniak give you any indication of where he was headed?

A: Mr. Szymaniak was very vague and did not answer our questions, would not tell us any information regarding his activities.

[Defense Counsel]: I'd object, your Honor.

[The Court]: On what grounds, sir?

[Defense Counsel]: At this point in time I don't believe that the witness has indicated that he has given the defendant any of his rights with regard to any questions that were asked and his proper refusal, if you will, to answer or respond to any questions.

[The Court]: Ms. Cottrell?

[The Assistant United States Attorney]: I can clear that up in two questions, your Honor.

By Ms. Cottrell [the Assistant]:

Q: Was Mr. Szymaniak advised of his rights, his right to remain silent, his right to counsel?

A: Yes, he was. We advised him on our Form I–214, advisal of rights, the form, and he signed the form saying that he was given his rights.

Q: And did he indicate whether he wanted to speak with you?

A: No. When we read him his rights and started to interview him, he stated that 'I'm in a lot of trouble and I want to speak to my lawyer.'"

The court overruled defense counsel's objection to this testimony.

On cross-examination, defense counsel elicited testimony tending to show that Szymaniak had invoked his right to remain silent immediately after arriving at Border Patrol headquarters, but that Agent Carkner had continued to pursue questioning of appellant:

"Q: And at what point in time after you arrived at the headquarters did you advise Mr. Szymaniak of what everybody traditionally knows as Miranda rights?

A: As soon as we got into the office. Standard procedure, first thing we do, we walk in the office, we get the forms and give them to them.

Q: And isn't it true at that point in time Mr. Szymaniak indicated that he did not wish to make any statements?

A: Yes.

Q: And isn't it true that after that point in time he didn't make any statements?

A: Yes.

Q: How did it come to pass that he made a remark that 'I'm in a lot of trouble'?

A: When we had, through the interpreter, received Mr. Dembowski's account of what transpired, I went back to Mr. Szymaniak and told him what Mr. Dembowski had said, and asked him again if he would care to clear this matter up and give us a statement.

Q: Your [sic] are now in the headquarters and in your uniform still?

A: Yes, sir.

Q: Did you still have your weapon on?

A: Yes, sir.

Q: Do you have a recollection whether of not this would be in the range of perhaps 3:00 in the morning?

A: We had him in the office from 2:25 to 8:00 the next morning. I got off duty, he was still in the office. *Now, there was actually a number of times when we would learn information and I would go back to Mr. Szymaniak requesting that he give us a statement. Three or four times, approximately 3:30 was probably one of them.*

(emphasis added).

At trial, the government introduced the deposition testimony of Dembowski, who had pleaded guilty to entering the United States without inspection, a violation of 8 U.S.C. § 1325 (1988). Dembowski testified that he did not meet Szymaniak until they both were taken into custody by the Border Patrol agents.

Szymaniak testified at trial in his own behalf. He testified that he had gone to Montreal to meet a friend at the airport who was stopping on his way to Vancouver. He stated that, upon re-crossing the border, he was on his way to Lake Placid to meet another friend at a hotel. He stated that he was going to take this friend out for drinks. He would have arrived at Lake Placid at approximately 3:30 a.m. He denied knowing Dembowski and denied making the statements attributed to him by Agent Carkner.

At the conclusion of his case, Szymaniak moved for a mistrial based on the government's failure to disclose to the defense his alleged statement to Agent Carkner about being in trouble. The government denied that it knew of the statement prior to the agent's testimony at trial. The court denied the motion for a mistrial.

On July 26, 1990, Szymaniak was convicted by the jury of one count of attempted transportation of an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(B) (1988). He was acquitted by the jury of conspiracy to transport an alien within the United States in violation of 18 U.S.C. § 371 (1988). He was sentenced on October 10, 1990 to a seven month term of imprisonment, followed by two years of supervised release. This appeal followed. Szymaniak began serving his term of imprisonment on November 20, 1990.

## II.

We turn directly to Szymaniak's central contention that the statement he allegedly made to Carkner was obtained in violation of his fifth amendment rights and should not have been admitted. We agree with Szymaniak. We also agree that it was error for the government to elicit testimony about Szymaniak being "vague" and refusing to answer questions.

### (A)

It is elemental that when a suspect is taken into custody, he must be informed of certain rights, including his fifth amendment right to remain silent and to have counsel present during any interrogation. *Miranda v. Arizona, supra*, 384 U.S. at 467–71. As the Supreme Court explained in a subsequent case:

"Custodial interrogations implicate two competing concerns. On the one hand, 'the need for police questioning as a tool for effective enforcement of criminal laws' cannot be doubted. Admissions of guilt are more than merely 'desirable,' they are essential to society's compelling interest in finding, convicting, and pun-

ishing those who violate the law. On the other hand, the Court has recognized that the interrogation process is 'inherently coercive' and that, as a consequence, there exists a substantial risk that the police will inadvertently traverse the fine line between legitimate efforts to elicit admissions and constitutionally impermissible compulsion. *Miranda* attempted to reconcile these opposing concerns by giving the *defendant* the power to exert some control over the course of the interrogation."

*Moran v. Burbine,* 475 U.S. 412, 426 (1986) (emphasis in original) (citations omitted); *see also Oregon v. Elstad,* 470 U.S. 298, 308 (1985) ("Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities.").

In a recent case in which we found a *Miranda* violation, *United States v. Anderson,* 929 F.2d 96, 98 (2 Cir.1991), we likewise stated that: "Since custodial interrogation is inherently coercive, the aim of *Miranda* and its progeny is to safeguard a suspect's right, if he so chooses, to remain silent when questioned by the police." (citation omitted). As the Supreme Court initially outlined those safeguards, "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda, supra,* 384 U.S. at 473–74.

In *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981), one of *Miranda*'s most significant progeny, the Court stated that, while it previously had held that "after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel" (citation omitted). In *Edwards,* the Court specifically held that:

"when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only

that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

*Id.* at 484–85 (footnote omitted).

Recently, the Court reaffirmed its commitment to *Edwards,* stating that its "merit ... lies in the clarity of its command and the certainty of its application." *Minnick v. Mississippi,* 111 S.Ct. 486, 490 (1990). The Court explained that *"Edwards* is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.' The rule ensures that any statement made in subsequent interrogation is not the result of coercive pressures." *Id.* at 489 (citations omitted).

Accordingly, once a suspect asserts his right under *Miranda* not to be questioned outside the presence of an attorney, "statements made to the police must be spontaneous and not the result of interrogation." *United States v. Colon,* 835 F.2d 27, 30 (2 Cir.1987), *cert. denied,* 485 U.S. 980 (1988). Moreover, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980) (footnote omitted); *see Anderson, supra,* 929 F.2d at 102 (agent's misleading statements that suspect's invocation of right to counsel would permanently preclude him from cooperating with the police "contributed to the already coercive atmosphere inherent in custodial interrogation and rendered Anderson's first confession involuntary as a matter of law").

In the instant case it is uncontroverted that Szymaniak refused to waive his

right not to be questioned outside the presence of counsel. The government explicitly concedes as much in its brief, adding that "indeed, [appellant] refused to answer questions put to him by Border Patrol agents, and disclosed nothing of his activities." The government contends, however, that when Agent Carkner repeatedly approached Szymaniak, the agent wished only to determine Szymaniak's intentions with regard to making a statement. The government asserts that Agent Carkner's conduct did not amount to interrogation.

"[W]hen it is unclear whether the suspect has indeed invoked his right to silence, the interrogator can ask questions designed to clarify whether or not the suspect intends to talk." *Anderson v. Smith*, 751 F.2d 96, 103 (2 Cir.1984). In the instant case, however, Agent Carkner approached Szymaniak on three or four occasions after appellant clearly established that he did not wish to speak to the agents outside the presence of an attorney. Szymaniak did not initiate any of the encounters with Agent Carkner. Szymaniak's decision to stand mute was unambiguous and did not require clarification. Moreover, Agent Carkner confronted Szymaniak with information gathered from the agents' interview of Dembowski. Such behavior was calculated to elicit an incriminating response. *Cf. id.* at 104 (questioning continued validity of cases that held that police could confront suspects with incriminating evidence even after they invoked their *Miranda* rights). If Szymaniak's statement was made during one of these encounters, it was in response to interrogation outside the presence of counsel and thus in violation of the fifth amendment in light of his refusal to waive his right to counsel.

### (B)

■ Although a factual question remains as to precisely when Szymaniak made the statement about being "in a lot of trouble", it seems most likely that, as Agent Carkner appeared to clarify on his cross-examination, the statement was made after several efforts to get appellant to talk following the initial invocation of his rights. Upon that assumption, Agent Carkner's efforts plainly "traverse[d] the fine line," *Moran, supra,* 475 U.S. at 426, between permissible and impermissible investigatory techniques by depriving Szymaniak of his right to remain silent and to exercise some control over the course of the interrogation.

Even if Szymaniak's statement was made when Agent Carkner initially sought to question appellant, as the agent suggested on direct examination and as the government persists in urging now in the face of highly damning cross-examination, Szymaniak's due process rights were violated by the admission of evidence relating to his post arrest silence. In *Doyle v. Ohio,* 426 U.S. 610, 618 (1976), the Court held that it would be "a deprivation of due process to allow [an] arrested person's silence to be used to impeach an explanation subsequently offered at trial." It follows that statements of a suspect's intent to remain silent are inadmissible in the government's case-in-chief. *United States v. Pena,* 897 F.2d 1075, 1081 (11 Cir.1990); *see Wainwright v. Greenfield,* 474 U.S. 284, 292 (1986) (post-warning silence may not be used by prosecution to cast doubt on insanity defense). Even " '[w]here a defendant's post-*Miranda* utterance is an ambiguous expression of his desire to remain silent, that utterance should receive the same treatment as naked silence.' " *Pena, supra,* 897 F.2d at 1081 (citation omitted). In the instant case, Szymaniak's statement was not ambiguous and should not have been admitted. Moreover, Carkner testified that "Szymaniak was very vague and did not answer our questions, would not tell us any information regarding his activities." That testimony also should not have been admitted as it raised the possibility that the jury would use Szymaniak's silence to draw an impermissible inference of guilt.

The government's assertion that it did not anticipate Agent Carkner's volunteered quotations of Szymaniak's post-warning statements does not affect our conclusion. The error occurred when the government witness put the inadmissible statements to the jury, over the defendant's objection. A

prosecutor has ample opportunity to review the testimony of government agents before trial and should probe specifically as to what the agent will say concerning statements of the defendant. *See* Fed.R. Crim.P. 16(a)(1)(A) (government's obligation, upon request, to disclose substance of oral statement of defendant to be used at trial).

### III.

 Our conclusion that errors in the admission of evidence were made does not automatically require reversal. Indeed, at oral argument the government conceded that errors were made but argued that the errors were harmless. If the government can demonstrate that an error was harmless, reversal is not necessary. *Chapman v. California*, 386 U.S. 18, 22 (1967); *Pena, supra*, 897 F.2d at 1082. This principle notwithstanding, we are constrained to hold that the errors in this case were not harmless.

An error is not harmless if " 'there is a reasonable possibility that the improperly admitted evidence contributed to the conviction.' " *Anderson, supra*, 751 F.2d at 105 (citation omitted). In the instant case, there is such a reasonable possibility. The government's case rested entirely on circumstantial evidence. It consisted primarily of the fact of Szymaniak's presence in the area where Dembowski was discovered, along with Szymaniak's statements that he "did not know the guy." Considered in the context of the entire record, Carkner's testimony that Szymaniak was "vague" and that he said that he was "in a lot of trouble" stand out in bold relief as incriminating. In this case, the government simply has failed to meet its burden of "prov[ing] beyond a reasonable doubt that the admission of the statements did not contribute to the verdict obtained." *Pena, supra*, 897 F.2d at 1082.

### IV.

To summarize:

The district court erred in admitting statements made by Szymaniak subsequent to his assertion of his right to remain silent and his request for counsel, and in admitting statements about Szymaniak's refusal to answer questions. Such statements were admitted in violation of appellant's fifth amendment and due process rights. Since there is a reasonable likelihood that the admission of the statements contributed to Szymaniak's conviction, we decline to hold that the errors were harmless. In view of our holding above, it is neither necessary nor appropriate for us to rule on appellant's contention that he was denied effective assistance of counsel.

Reversed and remanded for a new trial.