COPE, J.
(specially concurring).
Although there was an error in the denial of the motion to suppress the defendant’s statement, the error was harmless.
I.
The detective gave defendant-appellant Clark full Miranda[1] warnings, after which defendant stated in substance, “I’m not going to talk to you now because what I say could put me in jail for a long time. I’ll testify against Mark, but I want to talk to a lawyer.” [2]
After ruling that the first sentence was admissible, the court gave the defense the option of having only that sentence admitted, or having both sentences admitted into evidence:
THE COURT: ...
What’s your position Mr. Peckins? Obviously you want everything out, but you’re not going to get it. I think that statement is coming in.
Do you prefer to cut it in half or do you want the entirety in?
You have the option. If the statement comes in, the entirety of the statement comes in at your option. I’ll leave it up to you. I really don’t know which would be less damaging. You’re between a rock and a [hard] place.
The court allowed defense counsel until the next day to make a decision.
The following day, just before trial began, defense counsel renewed his objection to any part of the statement coming into evidence. Defense counsel then indicated that if the first sentence were to come into evidence, then the second sentence should come in as well so as to show the full context of the statement that was made. Consequently, both sentences were presented to the jury.[3]
*187 ii.
The question before us is whether the trial court erred in ruling admissible the statement, “I’m not going to talk to you now because what I say could put me in jail for a long time.”
The first part of this sentence — “I’m not going to talk to you now” — is an invocation of the right to silence. Under Miranda itself, that part of defendant’s statement should not have been placed before the jury. The Miranda decision provides:
In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.
384 U.S. at 468, 86 S.Ct. 1602 (emphasis added; citations omitted); see United States v. Szymaniak, 934 F.2d 434, 439 (2d Cir.1991); Royal v. State, 347 So.2d 742, 743-44 (Fla. 4th DCA 1977); Carter v. State, 335 So.2d 875, 875-76 (Fla. 4th DCA 1976); see also Jones v. State, 200 So.2d 574-576 (Fla. 3d DCA 1967). But see Shields v. State, 269 Ga. 177, 496 S.E.2d 719, 720-21 (1998).
The second part of the defendant’s statement — “because what I say could put me in jail for a long time” — is a volunteered statement, which the defendant made after he had been warned that anything he said could be used against him. It would have been permissible for the State to introduce in its case in chief that the defendant said, “what I say could put me in jail for a long time.” See Royal v. State, 347 So.2d at 743-44.
Thus, the first part of defendant’s statement, where he invoked his right to remain silent, should have been suppressed and should not have been placed before the jury. The second part of the same sentence was not subject to suppression, and was admissible in evidence.
III.
An error of this type is subject to harmless error analysis. See Traylor v. State, 596 So.2d 957, 973 (Fla.1992); State v. DiGuilio, 491 So.2d 1129, 1134-37 (Fla.1986). After redacting the first part of defendant’s statement, it was permissible for the jury to hear that defendant said “what I say could put me in jail for a long time.” I do not think that there is a material difference between that statement, and the full sentence, “I’m not going to talk to you now because what I say could put me in jail for a long time,” or for that matter, the entire two sentences which were placed before the jury at the option of defendant. The heart of the matter was the volunteered statement that “what I say could put me in jail for a long time.”
This was a shootout on a city street in a dispute over territory for street drug sales. The defendant was in the back seat of a Cadillac driven by Sabrina Simmons. Simmons’ husband, Mark Cole, was in the front passenger seat. A gunfight occurred between the occupants of the Cadillac and individuals on the street. During this gunfight, a bystander was shot and killed as she attempted to enter her apartment while carrying an infant.
It was undisputed that the defendant was in the Cadillac and that the gunshots from the Cadillac were fired in the direction of the innocent victim. It was undisputed that the codefendant, Mark Cole, fired gunshots. The main dispute was whether defendant was also a shooter.
A homeless person from the neighborhood, who knew the codefendant and defendant by name, testified that both men fired gunshots from the Cadillac. Defendant sought to impeach the homeless person with the fact that she was a drug *188 addict, had a prior criminal record, and was being provided a place to live by the State at the time of trial.
Another witness from the neighborhood, who also knew the defendant and code-fendant by name, testified that Mark Cole was initially shooting from the Cadillac. Mark Cole was then struck by a bullet from the person he was shooting at. Cole handed the weapon to defendant who shot the weapon in the direction of the innocent victim. This witness also testified that several days after the shooting, the defendant flagged her car down and told her, “We didn’t mean to kill that lady.” The defense sought to impeach this witness with the fact that she had formerly had a drug problem and had an outstanding bench warrant for a failure to appear in court, at the time of trial.
The defense called Sabrina Simmons, the driver of the Cadillac and wife of Mark Cole, to testify at trial.[4] She confirmed that there was a gunfight, that Mark Cole fired gunshots, and that Mark Cole was struck by a bullet.[5] She testified, however, that the defendant ducked down in the back seat of the Cadillac when the gunfire started, and that the defendant did not fire a gun.[6]
In sum, it is undisputed that the defendant was in the Cadillac from which the gunshots were fired. Under the circumstances, the defendant’s statement that “what I say could put me in jail for a long time” is an important admission. It makes no material difference which version of defendant’s statement was admitted into evidence. The effect was the same. The error was harmless beyond a reasonable doubt.
IV.
I join in the affirmance of the conviction and sentence. While there was a Miranda error, it was harmless under the circumstances of this case.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. This is the version of defendant’s statement which was used at trial. The detective testified about this comment several times, and there are variations in each version. The quoted version appeared in the police report.

. In fairness to the trial judge, the Miranda issue in this case was a moving target. During the hearing on the motion to suppress, the detective testified from his recollection that the defendant had said the following:
THE WITNESS: He said if I tell you — -if I talk to you about what happened, I could go to prison for a long time. So, I think that before I cut any kind of a deal, I think I should probably talk to an attorney and let him cut the deal for me.
Under this version, the first sentence does not contain an invocation of the right to silence. The trial court was entirely correct in ruling that the first sentence was admissible in evidence.
However, when the Miranda issue was revisited the next morning before the start of trial, the State and defense counsel had stipulated that the most accurate version of the defendant's statement was contained in the detective’s written report. That version was used at trial and is the version quoted in the *187 text of this opinion. It begins with a clear invocation of the right of silence.
The defense renewed all objections to the introduction of any part of the defendant’s statement.

. Simmons had been charged in the murder but was acquitted in a separate trial.

. The case against Mark Cole proceeded separately.

. Prior to trial, Simmons had said she did not know whether defendant fired a gun or not.