*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0207p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____



RICHARD SHANEBERGER,

    *Petitioner-Appellant,*

   *v.*

           No. 07-2211

KURT JONES,

    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-74452—Arthur J. Tarnow, District Judge.

Argued: March 3, 2010

Decided and Filed: July 16, 2010

Before: BOGGS and NORRIS, Circuit Judges; ADAMS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Michael C. Merrick, DINSMORE & SHOHL LLP, Louisville, Kentucky, for Appellant. Andrew L. Shirvell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Michael C. Merrick, DINSMORE & SHOHL LLP, Louisville, Kentucky, Michael J. Newman, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellant. Brad H. Beaver, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

ADAMS, District Judge.   Petitioner Richard Shaneberger appeals from the district court's denial of his petition for habeas corpus filed pursuant to 28 U.S.C. § 2254.  Shaneberger contends that the district court erred when it found that he failed to demonstrate ineffective assistance of appellate counsel. We affirm.

## I. FACTUAL BACKGROUND

On December 11, 1996, Shaneberger was convicted of felony murder, aiding and abetting armed robbery, conspiracy to commit armed robbery, and aiding and abetting kidnapping.  Prior to his conviction, Shaneberger moved to suppress oral statements that he made on December 30, 1995.  Shaneberger contended that his statements were the result of an interrogation conducted in violation of his right to counsel.  The following facts have been developed in support of this argument.

Detective Richard Rau was placed in charge of the investigation of the shooting death of John East.  On December 29, 1995, Detective Rau interviewed Shaneberger's co-defendant James Rowe.  During that interview, Rowe admitted to being involved in the robbery with Justin Gillette and a man named "Rick."  After further interrogation, Detective Rau came to the conclusion that "Rick" referred to Shaneberger.  Armed with this information, Detective Rau returned the local police department the next day, intending to interview Shaneberger.  Unbeknownst to the detective, Shaneberger was already present and being interviewed at the department on unrelated charges. Detective Rau entered the interview room just as Shaneberger was receiving his *Miranda* warnings.  At that time, Shaneberger indicated that he wished to speak to his father before answering questions and that his father would make any decision about obtaining him an attorney.  The detective conducting the questioning ended the interview at that point, apparently concluding that Shaneberger had invoked his right to counsel. Detective Rau, however, then made a statement to Shaneberger:

> I told Shaneberger that… I don't mind laying my cards on the table. I asked him not to say anything but listen to what I had to say. I told him that I had already talked to his partner Rowe, and Rowe [had implicated him in the robbery].

Detective Rau then immediately left the jail without offering Shaneberger an opportunity to respond to his statement.

Sometime after Detective Rau left the jail, Trooper Michael Gutierrez was instructed to transport Shaneberger to the county jail. From the record before this court, it is unclear how much time elapsed between Detective Rau's statement and Shaneberger's subsequent transport to the county jail. However, shortly after the trip began, Trooper Gutierrez noticed that Shaneberger was crying and appeared uncomfortable. Believing that Shaneberger's handcuffs were too tight, Trooper Gutierrez asked him whether he was "okay." Shaneberger responded that he needed to get something off his chest. Trooper Gutierrez then once again read Shaneberger his *Miranda* rights and asked whether he understood them. Shaneberger responded in the affirmative and indicated a further desire to talk. During the trip, Shaneberger told Trooper Gutierrez, "Well, I didn't kill anybody, I'm not a killer, I just want you to know that." Trooper Gutierrez continued to encourage him to talk during the trip and upon arriving at the county jail, Shaneberger gave a full confession, implicating himself and identifying Gillette as the individual that shot and killed East.

Prior to trial, Shaneberger moved to suppress his custodial statements. The trial court denied the motion. In addition, Shaneberger's counsel opposed the State's motion to consolidate his trial with Rowe's trial. The motion was granted over the objection, and Shaneberger's counsel never sought thereafter to sever the trials. As a result, Shaneberger was tried jointly with Rowe, and Rowe's custodial statements were introduced against Shaneberger. Shaneberger was convicted by a jury of the counts detailed above.

On appeal, Shaneberger's appellate counsel did not challenge the trial court's ruling on his motion to suppress, nor did appellate counsel assert that trial counsel was ineffective for failing to move to sever the trials. Appellate counsel instead raised seven

other issues, including challenges to the sufficiency of the evidence, the admission of other acts evidence, the trial court's ruling on another, distinct motion to suppress, and alleged prosecutorial misconduct. Each claim was rejected and Shaneberger's convictions were affirmed. Following the Michigan Supreme Court's refusal to accept his discretionary appeal, Shaneberger moved for relief from judgment in the trial court. In that motion, Shaneberger raised numerous issues, including the two issues presented before this court. Relief with respect to that motion was denied at all levels of state review.

On November 4, 2003, Shaneberger filed his § 2254 petition in the district court. The petition was denied on September 6, 2007, and Shaneberger timely appealed.

## II. STANDARD OF REVIEW

We conduct a *de novo* review of the district court's decision to grant or deny a habeas petition. *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). Because Shaneberger filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), we may grant the writ "with respect to a 'claim that was adjudicated on the merits in state court proceedings' if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Murphy*, 551 F.3d at 493 (quoting 28 U.S.C. § 2254(d)(1)). "A state-court decision is contrary to clearly established federal law 'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Id.* at 493-94 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (alterations sic). "A state-court decision is an unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case, or if it either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id.* at 494 (quotation marks and citations omitted).

Both of Shaneberger's claims turn upon his assertion that he received ineffective assistance from his appellate counsel. The Supreme Court has held that "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, (1982). Accordingly, ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail, Shaneberger must show that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice, Shaneberger must demonstrate that, but for counsel's poor performance, "there is a reasonable probability" the result of his appeal would have been different. *Id*. at 694. Appellate counsel cannot be found to be ineffective for "failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Furthermore, the *Strickland* analysis "does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348-49 (6th Cir. 2003).

### III. LEGAL ANALYSIS

#### A.     Motion to Suppress

Shaneberger asserts that his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to suppress his custodial statements. Shaneberger's primary contention focuses on his belief that detectives continued to interrogate him following his request for counsel, in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). Shaneberger argues that the state court was incorrect in its evaluation of trial counsel's decision. We hold that the state court did not unreasonably apply existing law when evaluating this argument.

In *Edwards*, the Supreme Court held that "an accused … having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

*Id*. at 484-85.  In denying Shaneberger relief, the state court concluded that he had initiated further conversations with the police, thereby negating any claim that Shaneberger's right to counsel had been violated.  We find no error in that conclusion.

The Supreme Court has found that "interrogation" refers "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted).

> The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id*. at 301-02 (footnotes omitted; emphasis sic).  While we do not focus on the intent of the police, a practice that is subjectively intended to elicit an incriminating response will very likely produce a finding that the police should have known that such a result would occur.  *Id.* at 301 n.7.  Moreover, two Circuits have concluded that informing the accused that he had been implicated in a crime by a co-defendant constitutes interrogation under the *Innis* definition.  *See Nelson v. Fulcomer*, 911 F.2d 928, 935 (3d Cir. 1990); *United States v. Szymaniak*, 934 F.2d 434 (2d Cir. 1991).  Neither of these holdings supports reversal under the facts herein.

In *Nelson*, the defendant responded immediately to his co-defendant when confronted with the fact that the co-defendant had confessed.  In finding that interrogation had occurred, the *Nelson* panel concluded that "[t]he ploy of confronting a suspect with his or her alleged partner in crime and claiming that the partner has

confessed is indistinguishable from the types of police practices explicitly criticized in *Miranda* and *Innis*." *Nelson*, 911 F.2d at 935. In *Szymaniak*, the defendant confessed after being approached three or four times by a government agent and being provided with information gained from another interrogation. Concluding that a violation had occurred, the Second Circuit noted as follows: "If Szymaniak's statement was made during one of these encounters, it was in response to interrogation outside the presence of counsel and thus in violation of the fifth amendment in light of his refusal to waive his right to counsel." *Id.* at 439.

There is little doubt that Detective Rau's actions tread near the line between what is acceptable and what violates Shaneberger's right to counsel. Without the specific portions of the statement discussed below, Detective Rau's comment would fit squarely within the category described by *Innis* as interrogation. However, Detective Rau did not simply inform Shaneberger that a co-defendant had implicated him in a crime, as occurred in *Nelson.* Instead, when Detective Rau informed Shaneberger that Rowe had implicated him in the crime, Rau specifically informed Shaneberger not to respond to him. Moreover, Rau left the room immediately after conveying the information to Shaneberger.

While Detective Rau's statements create a close question, this court does not sit in independent judgment of the merits of Shaneberger's underlying *Innis* challenge. Instead, we must examine the merits of his claim under the AEDPA's "highly deferential" standard of review that "demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotations omitted). Based upon the facts detailed herein, we cannot say that the state court unreasonably applied *Strickland* and *Innis*. We find that whether Detective Rau *should have known* that his comments would elicit an incriminating response is a close question - a question that could reasonably be answered by a state court in the negative.

There is no dispute that Detective Rau informed Shaneberger that he had been implicated by a co-defendant. Detective Rau, however, gave Shaneberger no opportunity to respond and indeed directed him not to respond. Supporting the state

court's decision is the fact that Detective Rau not only permitted no time for a response, but no response was immediate. The record does not disclose the exact time that elapsed between Detective Rau's statement and Shaneberger's subsequent decision to speak to another law enforcement official. The record, however, does clearly depict that Shaneberger chose to speak to an entirely different officer at a different location and time, and an officer who had no prior knowledge of Detective Rau's involvement with Shaneberger. Accordingly, we find that it was not unreasonable for the state court to conclude that these latter facts took Detective Rau's statement outside the realm of interrogation as defined by *Innis*. That is, it was reasonable to conclude that Detective Rau would not have known that his statement was likely to elicit an incriminating response. Based upon this conclusion, we cannot say that the state court was unreasonable in holding that Shaneberger had failed to demonstrate ineffective assistance of appellate counsel. This court, therefore, cannot reverse under the highly deferential AEDPA standard of review.

## B.     Motion to Sever

Shaneberger's argument for reversal on this ground is dependent upon a finding that his statements should have been suppressed. Having concluded that Shaneberger demonstrated no reversible error in the district court's decision with respect to the suppression issue, we adopt the thorough and detailed harmless error analysis of the district court with respect to the severance issue.

## IV. CONCLUSION

For the foregoing reasons, the district court's denial of the habeas petition is **AFFIRMED**.